Argued and submitted December 20, 1995, reversed May 29, 1996

In the Matter of Calvin Scott Jensen,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

CALVIN SCOTT JENSEN,
*Appellant.*

(950564755; CA A88883)

917 P2d 541

Thomas A. Coleman argued the cause and filed the brief for appellant.

Pamela G. Wood, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Armstrong, Judges.

HASELTON, J.

**HASELTON, J.**

**1.**     Appellant seeks reversal of an order finding him to be a mentally ill person and committing him to the Mental Health Division. ORS 426.130(1)(b)(C). On *de novo* review, we reverse. *State v. O'Neill*, 274 Or 59, 61, 545 P2d 97 (1976).

This case presents the novel question of whether a person who was criminally incarcerated at the time of a civil commitment hearing could be committed on a "basic needs" basis. ORS 426.005(1)(d)(B). The material facts are uncontroverted: Appellant suffers from a mental disorder that has caused him difficulty with obtaining shelter, food, and medication for himself. In addition, appellant's mental disorder has, on occasion, caused him to behave in a manner that others have found threatening. It is further uncontested that, at the time of the commitment hearing, appellant was incarcerated at the Multnomah County Detention Center (MCDC) on charges unrelated to the mental commitment proceedings. There was no evidence as to when appellant was to be released from criminal incarceration.

■     ORS 426.005(1)(d)(A) and (B) (*formerly* ORS 426.005(1), (2)(a) and (b)) provide:

"(1)    As used in ORS 426.005 to 426.390, unless the context requires otherwise:

"*  *  *  *  *

"(d)    'Mentally ill person' means a person who, because of a mental disorder, is one or more of the following:

"(A)    Dangerous to self or others.

"(B)    *Unable to provide for basic personal needs and is not receiving such care as is necessary for health or safety*." (Emphasis supplied.)

On *de novo* review, we examine the record to determine whether the state has established by clear and convincing evidence that appellant is unable to provide for his basic needs. *State v. Sea*, 137 Or App 333, 336, 904 P2d 182 (1995); *State v. Johnson*, 131 Or App 561, 564, 886 P2d 42 (1994).

In *State v. Bunting*, 112 Or App 143, 146, 826 P2d 1060 (1992), we held:

> "A person is subject to a 'basic needs' commitment * * * if clear and convincing evidence demonstrates that, due to a mental disorder, *there is a likelihood that the person probably would not survive in the near future because the person is unable to provide for basic personal needs and is not receiving care necessary for health or safety.*" (Emphasis supplied.)

Basic needs are "things necessary to sustain life." *State v. Brungard,* 101 Or App 67, 71, 789 P2d 683, *mod* 102 Or App 509, 794 P2d 1257 (1990), *rev den* 311 Or 427 (1991).

Appellant argues that, given the uncontroverted fact that he was criminally incarcerated at the time of the commitment hearing, the state's proof failed to satisfy the *Bunting* standard. In particular, appellant asserts, the state failed to prove by clear and convincing evidence that he "probably would not survive in the near future" because he was "not receiving care necessary for health and safety." 112 Or App at 146. The state responds that "the record is devoid of evidence regarding the length of time that [appellant] would be in custody at MCDC or the adequacy of the treatment he would receive there."

■ The state's response misses the mark. The state, not the alleged mentally ill person, has the burden of proving that, in the totality of that person's circumstances, commitment is warranted. Thus, it was incumbent for the state to demonstrate convincingly why, notwithstanding appellant's incarceration at the time of the hearing, he "probably would not survive in the near future." It did not do so.[1]

That failure of proof is particularly remarkable given statutory standards governing local correctional facilities, including MCDC. ORS 169.076 provides that local correction facilities should:

> "(5)  Provide for emergency medical and dental health * * *.
>
> "* * * * *

---

[1] The state did not, for example, submit evidence that appellant's release date was impending and argue that, upon release, appellant would be incapable of providing for his basic needs.

"(7)    Insure that confined detainees and prisoners:

"(a)    Will be fed daily at least three meals served at regular times[.]

"(b)    Will be fed nutritionally adequate meals in accordance with a plan reviewed by a registered dietician or the Health Division.

"* * * * *

"(8)    Insure that the facility be clean, and provide each confined detainee or prisoner:

"(a)    Materials to maintain personal hygiene.

"(b)    Clean clothing twice weekly.

"(c)    Mattresses and blankets that are clean and fire-retardant.

"(9)    Require each prisoner to shower at least twice weekly.

"* * * * *

"(11)    Keep the facility safe and secure in accordance with the State of Oregon Structural Specialty Code and Fire and Life Safety Code."

Moreover, ORS 169.140 provides:

"The keeper of each local correctional facility shall furnish and keep clean the necessary bedding and clothing for all prisoners in the custody of the keeper, and shall supply them with wholesome food, fuel and necessary medical aid."

We thus conclude that the state failed to meet its burden with respect to "basic needs" commitment.

■    The state argues, alternatively, that the commitment order should be sustained on the basis that appellant was a "danger to self or others." ORS 426.005(1)(d). We disagree for two reasons. First, like the trial court, we conclude that the evidence was generally insufficient to support commitment on that basis. Second, as with our analysis of the basic needs issue, the state's evidence failed to address the duration of appellant's incarcerated status or how, if at all, appellant was a danger to others while incarcerated.

Reversed.