Argued and submitted April 21, affirmed October 27, 2004

In the Matter of Ronald D. Gibson,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

RONALD D. GIBSON,
*Appellant.*

MC010054; A118622

100 P3d 750

Kent A. Anderson argued the cause and filed the brief for appellant.

Patrick G. Ward, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Judge, and Leeson, Judge pro tempore.

BREWER, J.

## BREWER, J.

Appellant seeks reversal of a judgment continuing his commitment to Department of Human Services (DHS), arguing that the state did not prove by clear and convincing evidence that, at the time of the commitment hearing, he was "still a mentally ill person and in need of further treatment." ORS 426.301-426.307.[1] Specifically, he argues that the state failed to prove that he suffered from a mental disorder and that, as a result of that disorder, he was dangerous to others. ORS 426.005(1)(d)(A). On *de novo* review, we affirm.

We consider the facts as they existed at the time of the commitment hearing. In the early 1980s, appellant pleaded guilty to sex abuse in the second degree arising out of an incident in which he forcibly raped a woman in a parking lot while brandishing a knife. In 1991, again while brandishing a knife, appellant attempted to force a woman into his car; he was convicted of attempted kidnaping in the first degree and carrying a dangerous weapon with intent to use it. He was sentenced to 20 months in prison. During his incarceration, he was transferred to a social skills unit of the Oregon State Hospital (OSH), where a psychologist diagnosed him as suffering from several different paraphilias; the psychologist stated that appellant "fits the profile of [a] sexual psychopath who has developed extremely serious paraphili[a]c coercive disorders." While confined at OSH, appellant admitted having fondled women at bus stops.

In 1993, following his release from prison and while still under community supervision, appellant committed sexual assaults against two women, resulting in convictions for sexual abuse in the first degree and unlawful use of a weapon. He was again sentenced to prison, where he served

---

[1] ORS 426.301 provides for the continued commitment of a person who has been involuntarily mentally committed under ORS 426.130 when the person "is still mentally ill and in need of further treatment." A person who "protests" his or her further commitment is entitled to a hearing before the court on whether commitment should be continued. ORS 426.301(3)(d). ORS 426.307 sets out standards and procedures for such hearings. We note that, although the judgment in this case commits appellant to the Mental Health Division, the 2001 legislature amended the relevant statutes to provide for commitment to DHS.

approximately eight years. On his release, a trial court determined that appellant was mentally ill, specifically, that his paraphilia was a mental disorder and that he was dangerous to others as a result of that condition. The trial court committed him to the Mental Health Division for a period of 180 days; this court affirmed the commitment. *State v. Gibson*, 187 Or App 207, 66 P3d 560, *rev den*, 335 Or 655 (2003). In May and June 2002, at the conclusion of that term of commitment, another hearing was held; the judgment of continued commitment at issue in this case ensued.

On appeal, appellant contends that the record lacks clear and convincing evidence to support his commitment in three respects. First, he contends that it fails to show that, at the time of the hearing, he suffered from paraphilia. According to appellant, under the *Diagnostic and Statistical Manual of Mental Disorders* 522-23 (4th ed 1994) (DSM- IV), the essential features of paraphilia are recurrent, intense, sexually arousing fantasies, sexual urges, or behaviors that cause clinically significant distress or impairment in certain important areas of functioning. Appellant argues that the record in this case indicates no impairment in functioning related to any sexual fantasies he may have had.

Second, appellant contends that the record fails to show that, at the time of the hearing, he was dangerous to others. He contends that, at most, the record provides evidence that he was dangerous in 1993, at the time of his most recent convictions for sex offenses; that there is no evidence that he exhibited any inappropriate sexual behavior during his most recent hospitalization, despite coming into contact with female staff and patients; and that, as demonstrated by the testimony of a witness at his hearing, the risk that he will commit another sex offense within five years is only 33 percent.

Finally, appellant argues that, even if the record supports a conclusion that he was dangerous to others at the time of the hearing, it lacks clear and convincing evidence that any danger was "because of" a mental disorder. He contends that, although he "may present a degree of danger to others," the record shows that witnesses' concerns about his

dangerousness were based on his history of sex offenses and the risk that he would reoffend.

The state responds that there is clear and convincing evidence that appellant suffers from a mental disorder, as well as clear and convincing evidence that, because of that disorder, he is a danger to others. For the following reasons, we agree that the trial court did not err in continuing appellant's commitment.

 To support an involuntary mental commitment, the evidence must establish that the facts supporting one of the grounds under ORS 426.005(1)(d) are "highly probable." *State v. Webber*, 181 Or App 229, 235-36, 45 P3d 1046 (2002). Where the relevant ground is that the allegedly mentally ill person is "dangerous to * * * others," ORS 426.005(1)(d)(A), there must be clear and convincing evidence sufficient to form a foundation to predict future dangerousness. *State v. King*, 177 Or App 373, 377, 34 P3d 739 (2001). This court has determined that the clear and convincing evidence standard is met as to that ground where a person "has threatened and has committed overt violent acts against others in the past." *Id.* (citing *State v. Bodell*, 120 Or App 548, 853 P2d 841 (1993), and *State v. Furnish*, 86 Or App 194, 738 P2d 607 (1987)). In addition, the statute requires that there be persuasive evidence, established by expert testimony or otherwise, that there is a causal nexus between the mental disorder and the relevant criterion. *Webber*, 181 Or App at 236 (citing *State v. Gjerde*, 147 Or App 187, 192, 935 P2d 1224 (1997)). Whether a person falls within the definition of a mentally ill person in ORS 426.005(1)(d) is determined by the person's condition at the time of the hearing as understood in the context of his or her history. *King*, 177 Or App at 377.

We begin with evidence pertaining to whether appellant suffered from a mental disorder at the time of the hearing.[2] The record includes a July 2001 Eastern Oregon

---

[2] The state contends that appellant failed to preserve his argument relating to whether he suffered from a mental disorder. Appellant's argument in his opening statement at the hearing that he was not subject to an involuntary mental commitment was sufficient for that purpose in this case. In any event, as discussed below, clear and convincing evidence in the record demonstrates that appellant suffered from a mental disorder.

Psychiatric Center (EOPC) "Admission History" in which a psychiatrist, Dr. Chandragiri, stated a "diagnostic impression" that appellant suffered from the Axis I disorder of paraphilia not otherwise specified. In a February 2002 written report, a psychologist, Dr. Lally, diagnosed appellant as suffering from paraphilia, frotteurism, sadomasochism, voyeurism, and fetishism. Dr. Templeman, a clinical psychologist, and Dr. Juguilon, appellant's treating psychiatrist, testified at the hearing that they had diagnosed appellant as suffering from sexual paraphilias; Templeman's May 2002 written report to the same effect also was admitted in evidence.

■ The described testimony and records provide clear and convincing evidence that, at the time of the hearing, appellant suffered from paraphilias. Specifically, and contrary to appellant's argument, the state was not required to prove that appellant suffered from any impairment in functioning. Under DSM-IV, paraphilias are marked by recurrent, sexually arousing fantasies, sexual urges, or behaviors that cause "clinically significant distress *or* impairment in * * * functioning." DSM-IV at 523 (emphasis added). As pertinent here, under the *Diagnostic and Statistical Manual of Mental Disorders* (4th ed 2000) (DSM-IV-TR), a "text revision" of DSM-IV that was expressly relied on by Lally, certain paraphilias, including frotteurism and voyeurism, involve fantasies that cause "marked distress or interpersonal difficulty," while others, including fetishism, continue to involve "clinically significant distress or impairment in * * * functioning." *Id.* at 566. In short, where the record shows that appellant suffered from various paraphilias and descriptions of those mental disorders in both DSM-IV and DSM-IV-TR indicate that none of them necessarily involves impairment of functioning, the state was not required to prove the latter. The trial court did not err in concluding that appellant suffered from a mental disorder.

We turn to evidence relating to appellant's dangerousness to others as of the time of the hearing. In his February 2002 written evaluation of appellant, the clinical psychologist, Lally, noted that appellant appeared to be "preoccupied by rape fantasies and highly sexually aroused by rape scenarios he runs in his head and reinforces through masturbation." Lally also noted that appellant had "kept well

hidden the characteristics of his deviant fantasies while in the hospital and in the community, and therefore has made it unlikely that treaters could intervene before his acting out occurs." Lally stated that, although appellant "needs treatment," he also was a "poor candidate" due to, among other factors, his "denial and minimization of his deviant inner life" and his "predatory pattern of offending." Although Lally did not recommend inpatient treatment—apparently on the ground that neither EOPC nor OSH provided the type of treatment that was appropriate for appellant—he nevertheless concluded that "[t]here is absolutely no doubt that [appellant] is dangerous."

Lally testified at the hearing that, in evaluating a sex offender, the offender's history is important and that, "barring any strong and significant evidence that suggests a significant change from prior historical functioning," it was appropriate to conclude that the offender "is functioning psychologically in the same manner as he did when he was committing his * * * violent acts in the community." Lally testified that appellant had demonstrated "minimal change" in his thinking and that he not only "still entertained his rape fantasies" but that those fantasies probably had been reinforced over time. Lally believed that, if released, appellant would be unable to control his "sexual assaultive tendencies" in the near future. Finally, Lally testified that 33 percent of offenders whose score on a standardized tool for estimating recidivism matched that of appellant would reoffend within five years. He also testified, however, that he was unable to determine whether appellant was in the group that would reoffend and that he did not believe in using that tool as the sole method of evaluating an offender.

A social worker, Cheryl Geiger, met with appellant four times between late October 2001 and mid-April 2002. Based on those sessions, Geiger prepared an adult sex offender evaluation of appellant, the purpose of which was, in part, to determine "the degree of risk he poses to the community." In the evaluation, Geiger noted appellant's history of sex offenses and the fact that he had "had possession of a weapon" during his three most recent offenses. She also noted his admissions to her that he "fantasizes about his past victims and his ex-wife, and masturbates to these scenarios"

and that he "becomes sexually aroused when thinking of hurting women and forcing them to have sex." She believed that it was "quite likely" that those fantasies had become "reinforced" and that they would "not be easily extinguished, if ever." Geiger believed that appellant lacked insight into his "problem" and that his minimization of his past actions made it "highly unlikely that he will be able to control his assaultive tendencies in the future," particularly in an unstructured environment. Geiger stated that appellant had "the potential to act out tendencies of hostile aggression"; his score on the "sexual assault scale" and the "sexual adjustment scale" portions of the Sexual Adjustment Inventory II questionnaire indicated that he fell into the "severe problem risk range." Geiger concluded that appellant "clearly has the potential for acting out aggressively on females in the future." At the hearing, Geiger testified that appellant had admitted to her that he enjoyed hurting women.

Templeman, the clinical psychologist, met with appellant in October 2001 for 45 minutes and in April 2002 for two hours. In his written report, Templeman noted appellant's history of sex offenses and the fact that he possessed or used a weapon when committing them; he stated that appellant had a "significant risk of relapse for sexual offenses in the future." At the hearing, Templeman stated, "I do believe he poses a danger to others based on his sexual paraphilia and also the Axis II diagnosis" of schizoid personality disorder. He also stated that, based on appellant's history, he believed that appellant "poses a significant risk of future sexual violence to women." Templeman agreed that untreated sex offenders such as appellant are "a high risk" and a "concern for the community" and that appellant "clearly needs a highly-structured, secure, closely-monitored program at this time."

Finally, appellant's treating psychiatrist, Juguilon, testified at the hearing that, based on appellant's history, his behaviors in the hospital, Lally's sex offender assessment, and other experts' opinions, he considered appellant to be dangerous to others if released from a confined setting. Juguilon noted that, although the medication that appellant was receiving, Paxil, might reduce appellant's physiological response to his sexual urges and fantasies, it did not reduce

his dangerousness. Juguilon described an incident in May 2002 in which appellant threatened in a "very loud, angry" voice to kill another patient.

A contrary view was offered by another clinical psychologist, Dr. Stanulis, who performed a three and one-half hour psychological evaluation of appellant in February 2002. In his written report, Stanulis noted appellant's history of sex offenses; the fact that he had not received any sex offender treatment; the fact that he had not engaged in any inappropriate assaultive or sexual behavior while hospitalized; and the fact that he had not been observed to have any "sexually dangerous thoughts or delusions." Stanulis opined that, although appellant appeared to have a "significant risk of recidivism," there was a lack of evidence that he was unable to control his behavior; he therefore concluded that appellant was not an "immediate danger to others." At the hearing, Stanulis reiterated that appellant could conform his behavior to the law despite his diagnosis of paraphilia and noted that, statistically, he had a "one-third chance of recidivism within the next five years."

■ We conclude that the record contains clear and convincing evidence that, at the time of the hearing, appellant was dangerous to others. First, as in *King*, the record contains ample evidence that appellant has not merely threatened, but has actually committed, "overt violent acts against others in the past." *See King*, 177 Or App at 377; *see also Bodell*, 120 Or App at 550-51 (evidence that the person's delusions had led him to threaten serious bodily harm to his wife and child, combined with testimony of a psychiatrist that there was a danger that the person would act on his delusions, was sufficient to show that he was dangerous to others); *Furnish*, 86 Or App at 197 (evidence that the person had physically harmed family members, viewed in light of his threatening statements, was sufficient to show danger to others). In addition, several experts believed that appellant currently was highly likely to act out against others (specifically, against women) if released from a structured environment. Nor does evidence relating to appellant's risk of recidivism as measured by a standardized test controvert the otherwise highly persuasive evidence in this case—the opinions of Templeman, Geiger, Juguilon, and, to a lesser extent, Lally—

relating to appellant's dangerousness for the purpose of commitment pursuant to ORS 426.005(1)(d)(A). *Cf., e.g., Weidner v. Armenakis*, 154 Or App 12, 959 P2d 623 (1998), *dismissed by order* July 13, 1998, *reasoning readopted and reaffirmed in Merrill v. Johnson*, 155 Or App 295, 964 P2d 284, *rev den*, 328 Or 40 (1998) (statutory term "severe emotional disturbance" is a legal, not a psychiatric or psychological term). The trial court did not err in determining that appellant was dangerous to others as provided in that statute.

■ We turn, then, to whether the record contains clear and convincing evidence of the required nexus between appellant's mental disorder and his dangerousness to others. In the "conclusions" section of her sex offender evaluation, Geiger clearly linked appellant's "entrenched" and "reinforced" "thought processes" relating to "forcing women to have sex with him and hurting them if they resist," on the one hand, and his clear "potential for acting out aggressively on females," on the other. As discussed above, in diagnosing appellant as suffering from paraphilia, Lally noted that appellant was "preoccupied by rape fantasies and highly sexually aroused by rape scenarios"; Lally also noted that appellant admitted fantasizing about his prior sex offenses just before committing them. Templeman based his opinion that appellant had a "significant risk" for committing future sexual offenses in part on appellant's "continued sexual fantasies of a sexual nature." Juguilon, appellant's treating psychiatrist, expressly testified that appellant was dangerous to others as a result of his mental "illness."

As previously discussed, Stanulis had a contrary view of appellant's status. In regard to this factor, he believed that appellant's failure to engage in any inappropriate assaultive or sexual behavior during his most recent hospitalization meant that a nexus was lacking between appellant's mental disorder and any inability to control his behavior. Nevertheless, on *de novo* review, we find that there is clear and convincing evidence that, at the time of the hearing, appellant was dangerous to others as a result of his mental disorder of paraphilia.

Affirmed.