Argued and submitted February 18, reversed November 24, 2010

In the Matter of F. C.,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

F. C.,
*Appellant.*

Lane County Circuit Court
300902088; A141405

243 P3d 144

Ann B. Kneeland argued the cause and filed the brief for appellant.

Vanessa A. Nordyke, Assistant Attorney General, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Linda Wicks, Assistant Attorney General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

ARMSTRONG, J.

**ARMSTRONG, J.**

Appellant seeks reversal of a judgment committing her to the custody of the Mental Health Division, ORS 426.130(1)(b)(C), based on a finding that, because of a mental disorder, she was dangerous to herself, ORS 426.005(1)(e)(A).[1] Appellant contends on appeal that the state failed to establish by clear and convincing evidence that she presented a danger to herself. We agree and, accordingly, reverse.

We review the facts *de novo*. *State v. O'Neill*, 274 Or 59, 61, 545 P2d 97 (1976).[2] Appellant suffers from psychosis and paranoia. In the two months before her commitment hearing, she underwent three psychiatric hospitalizations and had four emergency room visits. As a consequence of the last hospitalization, appellant was recommended for civil commitment, and the state initiated a commitment proceeding against her.

At the conclusion of the commitment hearing, the court found that appellant was

"dangerous to self[,] not in an intentional method[,] but [because of] her inability to care for herself. I'm really concerned. We've had probably two weeks of every night being [below] freezing temperature.

"I see [appellant is] refusing to do anything that's good for her recently. * * * She walks out of here against medical advice into weather that's not conducive to being homeless.

"I do not find that she's dangerous to others. Under the appellate criteria, I find that she is able to provide for her basic personal needs. That's a little bit in conflict with [the] dangerous to self [finding,] but the appellate criteria requires immediate death."

---

[1] Although ORS 426.005 and ORS 426.130 were amended in 2009, Or Laws 2009, ch 595, §§ 381, 393; Or Laws 2009, ch 828, § 23, those amendments do not affect our analysis.

[2] Mental commitment cases have been classified as equitable proceedings, *O'Neill*, 274 Or at 61 n 3, which we review *de novo* under ORS 19.415. ORS 19.415 was amended in 2009. Or Laws 2009, ch 231, § 2. The amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Or Laws 2009, ch 231, § 3. Because the notice of appeal in this case was filed before that date, we apply the 2007 version of ORS 19.415 and the applicable case law.

Therefore, the court ordered her commitment to the custody of the Mental Health Division for a period not to exceed 180 days.

■ On appeal, appellant contends that the state did not present clear and convincing evidence that she was a danger to herself. In particular, she argues that the likelihood of any harm she might suffer due to an inability to find shelter is speculative. In response, the state contends that the evidence established that appellant was unable to care for herself and placed herself in dangerous situations, thus proving that she was a danger to herself. Basically, the state argues that the evidence shows that appellant's mental disorder would cause her to be unable to find shelter in the freezing weather occurring at the time of the hearing and, hence, to be subject to a risk of hypothermia, which, because of her disorder, she would be unlikely to seek appropriate help to treat. For the following reasons, we agree with appellant.

■ The state bears the burden of proving by clear and convincing evidence that appellant has a mental disorder that makes her dangerous to herself, ORS 426.005(1)(e)(A); ORS 426.130(1)(b), a standard intended to recognize the importance of preserving personal liberties in civil commitment proceedings. Accordingly, that standard requires evidence that establishes the truth of the asserted facts to be highly probable. *State v. Jayne*, 174 Or App 74, 77-78, 23 P3d 990, *rev den*, 332 Or 316 (2001). To prove that appellant is dangerous to herself, the state must show that appellant has suffered or is at risk of suffering physical harm in the near future as a result of her mental disorder. *State v. Hambleton*, 202 Or App 526, 534, 123 P3d 370 (2005). Further, the court cannot rely on mere conjecture or speculation as proof of the need to commit a person. *See State v. Ayala*, 164 Or App 399, 404, 991 P2d 1100 (1999) ("Apprehensions, speculations and conjecture are not sufficient to prove a need for mental commitment.").

■ Here, the evidence that appellant would be unable to obtain shelter were she discharged is too speculative to satisfy the clear and convincing standard of proof. Sanchez, a psychiatrist and the state's only witness at the commitment hearing, testified that appellant could not take care of herself

with respect to her ability to find safe housing. But, in a commitment proceeding, an examiner's conclusions must be supported by facts. *State v. Allen*, 209 Or App 647, 653, 149 P3d 289 (2006). To support his opinion, Sanchez testified that appellant had refused to stay at the crisis management center to which she had been taken before her hospitalization, thus showing that she was unable to make appropriate housing decisions, and that he did not think that appellant could afford housing, although he admitted that he had no information on which to base his opinion about that. Contrary to Sanchez's conclusion, the record shows that appellant was staying in a hotel before her hospitalization, a practice that she claimed to have been following for about a month; that she did not want to remain at the crisis management center because she thought that it was a homeless shelter; and that she was being supported financially through various government programs. Basically, there is little, if any, evidence that supports a conclusion that appellant could not obtain housing if she were released, including, most importantly, no evidence that she had spent any recent time living on the street. Therefore, Sanchez's speculative conclusion that appellant would be unable to obtain shelter if she were discharged is not sufficient to meet the state's clear and convincing evidence burden and significantly undermines the state's theory that appellant was at risk of hypothermia.

Beyond that inadequately supported conclusion and the consequential undermining of appellant's inferred risk of hypothermia, the court's conclusion that appellant would not seek appropriate treatment for hypothermia because of her mental disorder is also speculative. Appellant had been treated for hypothermia just before the hearing, after she had been exposed to freezing rain from lying on the ground for a lengthy period.[3] Although her mental disorder may have led to her exposure to the elements, she had sought assistance at a nearby business for the effects of that exposure, and a person at the business had called for an ambulance. That recent incident shows that appellant appreciated the need for treatment for the effects of her exposure to freezing weather and

---

[3] Notably, the record does not indicate the degree of hypothermia for which appellant was treated.

had acted on that need despite her mental disorder. In sum, other than some very general testimony about the deterioration of appellant's mental condition over time, the record does not support the court's conjecture that appellant would be unable to care for herself in freezing temperatures.

In summary, we are not persuaded on *de novo* review that appellant's mental disorder would prevent her from finding shelter or, even if it would, that she would be subjected to a substantial risk of hypothermia for which she would not seek appropriate treatment. We also reject, for the same reasons, the state's argument that the court's judgment should be affirmed on the alternate ground that appellant was unable to provide for her basic personal needs.

Reversed.