Submitted December 3, 2010, reversed June 1, 2011

In the Matter of D. S.,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

D. S.,
*Appellant.*

Umatilla County Circuit Court
MC080027A; A140963

258 P3d 1250

Janie M. Burcart filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Matthew J. Lysne, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Appellant seeks reversal of a judgment extending his involuntary commitment to the custody of the Mental Health Division, ORS 426.307, based on a finding that, because of a mental disorder, he was dangerous to others, ORS 426.005(1)(e)(A).[1] He contends that the state failed to establish by clear and convincing evidence that he presented a danger to others. We agree and, accordingly, reverse.

Although we review the facts *de novo*, *State v. F. C.*, 239 Or App 83, 85, 243 P3d 144 (2010); ORS 19.415 (2007),[2] we first must determine the content of the record. Because appellant protested his continued commitment, *see* ORS 426.307, the court held a hearing on December 23, 2008, to determine whether to continue appellant's commitment. The only testimony at the hearing came from Dr. Johnson, a staff psychiatrist at appellant's treatment facility. No exhibits were offered or admitted at the hearing. The state argues that, under ORS 426.307(5),[3] the record before the trial court, and, thus, the record properly before us, included appellant's medical records from the commitment period that preceded the hearing. Although those medical records were filed with the trial court, and therefore are included in the trial court file, there is no indication that the records were admitted as evidence. *See State v. Hitt*, 179 Or App 563, 566 n 4, 41 P3d 434 (2002) ("[M]aterials placed in the trial court *file* [are not]

---

[1] Although ORS 426.005 and ORS 426.307 were amended in 2009, Or Laws 2009, ch 595, §§ 381, 420; Or Laws 2009, ch 828, § 23, those amendments do not affect our analysis; therefore, we refer to the current version of those statutes throughout this opinion.

[2] ORS 19.415 was amended in 2009. Or Laws 2009, ch 231, § 2. The amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Or Laws 2009, ch 231, § 3. Because the notice of appeal in this case was filed on December 31, 2008, we apply the 2007 version of ORS 19.415.

[3] ORS 426.307(5) provides:

"The provisions of [OEC 504, 504-1, 504-2, and 504-4] do not apply to the use of medical records from the current period of commitment or to testimony related to such records or period of commitment in connection with hearings under this section. The court may consider as evidence such reports and testimony."

Although the statute provides that the court may consider certain medical records and makes inapplicable to those records various provisions of the Oregon Evidence Code relating to evidentiary privileges, the statute does not operate to make the records evidence without requiring them to be admitted as such.

necessarily and automatically deemed incorporated into the evidentiary *record* of the commitment or further commitment proceeding." (Emphasis in original.)).[4] Therefore, the only evidence in the record is Johnson's testimony.

Appellant was first committed to the Mental Health Division on December 31, 2007, and the commitment sought to be continued here began on June 28, 2008. His treatment facility filed a request on December 5, 2008, to continue his commitment, indicating that appellant was suffering from schizoaffective disorder and was still mentally ill because he was dangerous to others, which required that he receive continued treatment.

At the December 23 hearing, Johnson testified that appellant's medical record indicated that, as a result of his schizoaffective disorder, appellant had engaged in dangerous behavior toward others in the past. Specifically, Johnson explained that appellant had

"threatened and attacked his own mother, at one point with a guitar[;] * * * at one point, had her in handcuffs, threatening her in that manner[; and] had broken several windows in an angry state [when he was off his medication] in a facility just prior to coming [to the current treatment facility]."

He also testified generally about appellant's involvement in some stalking incidents. However, despite the court's request to do so, Johnson did not identify when the dangerous episodes had occurred, other than the one in which appellant had broken several windows.[5]

During his current commitment, appellant had begun to take a new medication to control the symptoms of

---

[4] Not only is there nothing in the transcript of the December 23 hearing that shows that the state offered the medical records as evidence, the records in the trial court file have not been marked in any way that would indicate that they were admitted as exhibits during the proceeding.

[5] Johnson also testified that appellant's December 2007 commitment "follow[ed] a threat to his mother." However, Johnson did not describe the circumstances of that threat, nor did he suggest that the threat was one of the threats to which he had earlier referred, *viz.*, the threat with the guitar or the episode with the handcuffs.

his mental disorder, and, as a result of his treatment regimen, he was able "to move freely about the unit and the facility, and he ha[d] demonstrated no dangerous behavior [there]." According to Johnson, appellant "ha[d] taken his medications without fail * * * and ha[d], in essence, been an ideal person to work with." But Johnson was concerned that, despite his progress, appellant did not think he had a mental disorder and would discontinue taking his medication if he were no longer under any supervision, as he had done several times in the past and had indicated that he would do if released. Further, Johnson explained that, "[w]hen [appellant] has been off medications * * *, it has led to increased irritability, violence, threats of violence, and thought processes that are demonstrable with auditory hallucinations, with delusional thinking, and leading to a very disorganized way of behaving toward the world."

At the conclusion of the hearing, the court concluded that appellant did not believe that he had a mental disorder and that appellant would discontinue taking his medication without supervision, which would lead to the return of appellant's auditory hallucinations and dangerous behavior. The court found that appellant remained mentally ill and in need of further treatment, and, therefore, it continued his commitment for a period up to 180 days.

Appellant argues on appeal that, based on the lack of details in Johnson's testimony about the circumstances surrounding appellant's past threats and dangerous behavior, the state had not established by clear and convincing evidence that appellant remains a danger to others. In response, the state contends that appellant's insistence that he would not take his medication once he left supervision and his well-established history of becoming violent when untreated were established by clear and convincing evidence, and, therefore, the court did not err in finding that appellant was dangerous to others and in need of further treatment. For the reasons that follow, we agree with appellant.

In this proceeding, the state bears the burden of proving by clear and convincing evidence that appellant remains a danger to others and needs further treatment,

ORS 426.005(1)(e)(A); ORS 426.307(6), which requires evidence establishing that the truth of the facts asserted is highly probable, *State v. Jayne*, 174 Or App 74, 77-78, 23 P3d 990, *rev den*, 332 Or 316 (2001). To justify continued commitment on the "danger to others" ground, the state must do more than establish that appellant was dangerous to others at one time, *Hitt*, 179 Or App at 572-73; it must establish a factual foundation to predict appellant's future dangerousness based on his condition at the time of the hearing in the context of his history, *State v. Gibson*, 196 Or App 57, 61, 100 P3d 750 (2004). Further, the court cannot rely on mere conjecture or speculation to conclude that the state has met its burden. *See State v. Ayala*, 164 Or App 399, 404, 991 P2d 1100 (1999) ("Apprehensions, speculations and conjecture are not sufficient to prove a need for mental commitment.").

The state did not make the required showing here. Johnson testified that appellant had previously made threats and had engaged in other dangerous behavior when he had discontinued taking his medication. But, based on the record before us, with the exception of the episode before his June 28 commitment in which appellant had broken three windows in a social worker's office, we do not know when those incidents occurred or their details, *e.g.*, what medication appellant was taking at the time, how long he had been off his medication at the time of the incidents, or even the circumstances of the alleged threats. However, we do know that appellant has been, according to Johnson, "an ideal person to work with" who had not demonstrated any violent or threatening behavior and had consistently taken his medication while at his current treatment facility. Therefore, the evidence offered by the state about the danger that appellant had presented to others before his June 28 commitment establishes only a speculative factual foundation on which to predict appellant's future dangerousness if his commitment were not continued.[6]

---

[6] The window-breaking episode, while a concern, is not itself sufficient to meet the state's burden without details about the incident that would show that appellant remains a danger to others.

We are not persuaded on *de novo* review of the record that appellant's mental disorder would cause him to be a danger to others if his commitment were not continued, and, accordingly, we reverse the judgment that continued appellant's commitment.

Reversed.