Submitted September 15, affirmed December 14, 2016, petition for review allowed February 2, 2017 (360 Or 851)

In the Matter of K. J. B.,
A Person Alleged to have a Mental Illness.

STATE OF OREGON,
*Respondent,*

*v.*

K. J. B.,
*Appellant.*

Marion County Circuit Court
15CC06361; A160841

387 P3d 467

Eric J. Deitrick and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jona J. Maukonen, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Garrett, Judge, and Wollheim, Senior Judge.

## GARRETT, J.

In this civil commitment case, appellant seeks reversal of an order committing him to the Oregon Health Authority on the ground that appellant suffered from a mental disorder that made him dangerous to himself, dangerous to others, and unable to provide for his basic needs. ORS 426.130; ORS 426.005(1)(e) (2013).[1] We conclude that appellant failed to preserve the argument that he makes on appeal and, accordingly, we affirm the judgment of commitment.

Appellant has not requested that we exercise our discretion to review *de novo*, and we decline to do so in this case. Instead, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

Appellant has been diagnosed with schizoaffective disorder since 1986. Appellant's disorder causes him to become highly disorganized and experience delusions. Those symptoms worsen when appellant is not taking his medication. Appellant has experienced periods of homelessness and substance abuse and has struggled to take advantage of resources available to obtain food, shelter, and medical treatment.

In October 2015, appellant was arrested for setting a fire in public, and then held at Yamhill County Jail. At a subsequent arraignment on unrelated charges, he exhibited gross disorganization and bizarre behavior, which led to the initiation of this civil commitment proceeding.

At the civil commitment hearing, the state presented evidence regarding appellant's fire setting, his medical history, and his behavior in jail. Regarding the fire setting, the

---

[1] ORS 426.005 (2013) was amended twice in 2015. The first amendment effected a renumbering of the provisions of the statute. Specifically, ORS 426.005(1)(e) (2013)—the paragraph defining the term "person with mental illness"—was renumbered as ORS 426.005(1)(f). Or Laws 2015, ch 461, § 1. The second amendment effected a change to the definition of "person with mental illness." Or Laws 2015, ch 433, § 1. The amendment to the definition became effective after the hearing in this case.

state's precommitment investigator testified that, when she questioned appellant about the October 2015 fire, he told her that he had set the fire because he was trying to get warm. Appellant's mental health caseworker, who had worked with appellant for approximately a year, testified that she had received an earlier report from appellant's family that he had set fires at their property.

As to appellant's medical history, a county social worker testified about an earlier occasion, in July 2015, when appellant had been brought to jail with an infected toe. Appellant had failed to sufficiently care for a foot injury, leading to the infection, which required amputation of the toe. After the amputation, appellant initially refused to take antibiotics and to care for his foot. But, once appellant was stabilized on his psychiatric medications, he began taking the antibiotics and, according to the social worker, appeared to "clear up pretty good before he left jail."

Finally, regarding appellant's behavior during his current incarceration, the state presented witnesses who testified that appellant had created unsanitary conditions in his cell by causing his toilet to overflow and urinating on his belongings and mattress. He also had refused to meet with the jail's psychiatric nurse practitioner and to take psychiatric medications.

At the close of the evidentiary portion of the hearing, appellant's counsel argued that the state's evidence was insufficient to support an involuntary commitment, based on the following rationale:

> "[T]his is one of those very difficult cases where I—I do think that the state has met its burden to show that [appellant] suffers from a mental illness, * * * but I don't believe that they have * * * sufficient evidence to allow the court to find by clear and convincing evidence that he is unable to provide for his basic needs, or that he poses a risk to himself or to other people.
>
> "* * * * *
>
> "As for the basic needs, the law—case law is very clear on this. Basic needs, of course, refers to accessing food, accessing water, accessing necessary medical care to prevent imminent physical—well, a serious harm to the individual.

And I don't think that the state has shown that today. All of the witnesses today have testified that [appellant] has experience as a homeless individual, that he has struggled in getting into shelters, that he has struggled maintaining his housing for sure, but at the same time he's been resourceful. He has located food, he has located water, he has not refused food, not refused water. And he has shown himself capable of locating sufficient shelter when needed.

"As far as medical care, there's been a lot of talk about an amputated toe from July, but there's been no evidence that that continues to—to be an ongoing medical concern that he is ignoring. * * *

"So your honor, I just don't think we have enough here for the court to conclude that [appellant] is unable to meet his basic needs. * * *

"So your honor, we'd ask that you find yes that he—[appellant] suffers from a mental illness, but no he does not pose a risk to himself, he does not pose a risk to others, and he is not unable to meet his basic needs. [T]here's just * * * not enough evidence to conclude that here your honor."

The trial court disagreed, concluding that the state had established the requirements for commitment on three different grounds. The court found that appellant was a danger to himself because he created unsanitary conditions in his cell despite having recently had a toe amputated due to infection. The court also found that appellant posed a risk of danger to others based on the evidence that appellant had started fires outside of jail to keep warm. Finally, the trial court found that appellant was unable to meet his basic needs, based on a finding that appellant's survival would be jeopardized if he were released from jail at that time:

"[I]f [appellant] were released right now he would find himself in a life threatening condition because although he's experienced as a homeless person, right now he doesn't know what month it is and is riding on busses looking for an underground surveillance sewer system * * * and has dropped some weight and is refusing to take medications, is clearly delusional, not able to do what it takes to get into the shelters, even though he knows where they are. And under these circumstances * * * I do find that that high threshold * * * is met as far as his inability to * * * meet his basic needs."

On appeal, appellant contends that the record is insufficient to establish that he was a danger to himself, a danger to others, or unable to provide for his basic needs. We address only the "basic needs" issue, because it is dispositive.

Appellant argues that, because he was incarcerated at the time of the hearing, and because no evidence was presented that his release was imminent, our decision in *State v. Jensen*, 141 Or App 391, 917 P2d 541 (1996), precludes his commitment. In *Jensen*, we relied on the fact of the appellant's incarceration to conclude that the trial court erred in committing him on a "basic needs" basis.[2] *Id.* at 394-95. We observed that local correctional facilities are statutorily required to provide for the health and safety of the prisoners in their custody. *Id.* (citing ORS 169.076 and ORS 169.140). Because there was no evidence of the appellant's release date, and because the state did not demonstrate that the appellant probably would not survive *while incarcerated*, we concluded in *Jensen* that the evidence was insufficient to support the appellant's commitment. *Id.* Similarly, here, appellant argues that the state failed to present any evidence that he was about to be released from jail; thus, he reasons, in light of *Jensen*, the court could not have concluded that his near-term survival was jeopardized.

The state responds that appellant's claim of error was not preserved. The state acknowledges that, at the hearing, appellant made a general argument challenging the sufficiency of the evidence to support commitment on any of the three statutory grounds. In the state's view, that general contention was inadequate to preserve the argument that appellant now makes on appeal, *i.e.*, that the evidence was insufficient to support a commitment under *Jensen* because the record is silent regarding when appellant was to be released from jail. We agree with the state.

A well-settled principle of our jurisprudence is that, before an issue can be considered on appeal, it must first be

---

[2] We also noted that the state's evidence was insufficient to support a commitment on the basis that the appellant was a "danger to self or others" because the state "failed to address the duration of appellant's incarcerated status or how, if at all, appellant was a danger to others while incarcerated." *Jensen*, 141 Or App at 395.

raised in the trial court. *State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011) ("As a general rule, claims of error that were not raised in the trial court will not be considered on appeal."). That principle applies equally to civil commitment cases. *See, e.g., State v. A. R.*, 192 Or App 296, 298, 84 P3d 1129 (2004) (a failure to provide statutorily required advice to an allegedly mentally ill person in a civil commitment proceeding is "plain error that we exercise our discretion to consider *despite an appellant's failure to raise and preserve the issue at the hearing*" (emphasis added)); *State v. Tardanico*, 132 Or App 230, 888 P2d 15 (1994) (same). Whether an issue has been preserved for appeal depends, in part, on whether an objection is "'specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted.'" *State v. Bigelow*, 238 Or App 344, 347-48, 242 P3d 719 (2010), *rev den*, 350 Or 130 (2011) (quoting *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000)). Apart from promoting judicial economy, preservation also "ensures fairness to an opposing party, by permitting the opposing party to respond to a contention and by otherwise not taking the opposing party by surprise." *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008); *Bigelow*, 238 Or App at 348 ("Another objective of the preservation rule is to ensure that adverse parties are not taken by surprise, misled, or denied the opportunity to present their positions on an issue raised by an adversary."). In close cases, the question of whether an issue has been sufficiently preserved for appeal turns on whether the policies behind the rule, "*e.g.*, procedural fairness to the parties and the trial court, judicial economy, and full development of the record," have been sufficiently served. *State v. Parkins*, 346 Or 333, 340-41, 211 P3d 262 (2009).

Those policies have not been served in this case. Below, appellant's argument challenging the sufficiency of the evidence was directed at appellant's own conduct; he argued that his behavior was not problematic enough to permit a conclusion that he was dangerous to himself or others, or unable to meet his own basic needs. On appeal, his argument is qualitatively different. Rather than focus on his own behavior while out of jail, as he did to the trial court,

appellant asks us to conclude, essentially, that *regardless* of what hazards might otherwise be created by his behavior, the fact of his being in jail obviates any concern that he will fail to survive in the near term. That point was never made to the trial court. If it had been made, the state and the trial court would have had the opportunity to address the issue on which the existing record is silent: When was appellant going to be released from jail? As far as we can tell, appellant's release was imminent; if so, that may have been a significant factor leading the state to seek his civil commitment—and might explain why appellant never directed the trial court to *Jensen*.[3]

Thus, the propriety of appellant's commitment in light of our decision in *Jensen* could have been resolved, as it ought to have been, at appellant's commitment hearing. For those reasons, we decline to review appellant's challenge to the sufficiency of the evidence to support his commitment on the basis of "basic needs."[4]

Because we affirm appellant's commitment on the first basis articulated by the trial court, we do not reach the

---

[3] The dissent cites our decisions in *State v. A. S.*, 211 Or App 100, 153 P3d 151 (2007), and *State v. R. D. G.*, 196 Or App 57, 100 P3d 750 (2004), in concluding that appellant adequately preserved his appellate argument for review. In *R. D. G.*, we explained, in a footnote, that the appellant's argument below that he was "not subject to an involuntary mental commitment" was sufficient to preserve for appeal a general challenge relating to the sufficiency of the state's evidence that he suffered from a mental disorder. 196 Or App at 61 n 2. Similarly, in *A. S.*, we explained that the appellant's repeated objections to hospitalization at his commitment hearing were sufficient to preserve a general claim of error as to the sufficiency of the state's evidence to support an involuntary commitment. 211 Or App at 101. Respectfully, we view neither case as analogous to the situation here, where appellant makes a specific argument on appeal that is qualitatively different from any argument that was made to the trial court, and where it is clear that the record could have developed differently if the argument now being made had been made below.

[4] Appellant does not contend that his claim of error on appeal constitutes an error of law that is apparent on the record, ORAP 5.45(1). Accordingly, we decline to undertake such an analysis. *See State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597 (2015) ("[W]e ordinarily will not proceed to the question of plain error unless an appellant has explicitly asked us to do so because it is incumbent upon the appellant to explain to us why an error satisfies the requisites of plain error and, further, why we should exercise our discretion to correct that error." (Internal quotation marks and citations omitted.)); *Bigelow*, 238 Or App at 348 (declining to review for plain error where the defendant did not assert that the argument made on appeal demonstrated an error of law that was "apparent on the face of the record").

question of whether the evidence was sufficient to support a commitment on the basis that appellant's mental disorder made him dangerous to himself and others.

Affirmed.

**DUNCAN, P. J.,** dissenting.

The issue in this appeal is whether the state presented clear and convincing evidence to prove that appellant, who was in the custody of a jail at the time of the commitment hearing, met the criteria for involuntary commitment. *See* ORS 426.130; ORS 426.005(1)(e) (2013), *amended by* Or Laws 2015, ch 461, § 1; Or Laws 2015, ch 433, § 1.[1] The majority holds that appellant did not preserve his appellate argument. 282 Or App at 864. Specifically, the majority holds that appellant did not preserve his argument that the state failed to present sufficient evidence to prove that he was "[u]nable to provide for basic personal needs and [was] not receiving such care as is necessary for health or safety." ORS 426.005(1)(e)(B). I respectfully disagree. As set out below, appellant's counsel raised the general issue of whether the state presented sufficient evidence to support commitment, as well as the specific issue of whether appellant was unable to meet his basic needs in jail. That was more than sufficient to preserve appellant's argument on appeal. Because I conclude that appellant's appellate argument is preserved, I address the merits of it and, for reasons explained below, I conclude that the state failed to present legally sufficient evidence to establish that appellant was subject to commitment. Consequently, I dissent.

I turn first to the question of preservation. When analyzing whether a party has preserved an issue for appellate review, "we examine the individual circumstances of the case at hand to determine whether 'the policies underlying the rule have been sufficiently served.'" *State v. Haynes*, 352 Or 321, 335, 284 P3d 473 (2012) (quoting *State v. Parkins*, 346 Or 333, 341, 211 P3d 262 (2009)). As the Supreme Court

---

[1] The subsections that correspond to ORS 426.005(1)(e)(A) and (B) (2013) are now numbered as ORS 426.005(1)(f)(A) and (B). Or Laws 2015, ch 461, § 1. All references to the statute are to the 2013 version.

has explained, the preservation rule promotes judicial economy and fairness:

> "[T]he rule of preservation 'gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal.' *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008). The rule also ensures fairness to opposing parties, by requiring that 'the positions of the parties are presented clearly to the initial tribunal' so that 'parties are not taken by surprise, misled, or denied opportunities to meet an argument.' *Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995)."

*State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011). Given the purposes of the preservation rule, a party preserves an issue when the party raises it in a manner sufficient to afford the opposing party and the trial court an opportunity to address it. If a party has done that, the issue is preserved, regardless of whether the opposing party or the trial court took the opportunity to address it.

Whether a party has preserved an issue for appellate review is determined on a case-by-case basis. *Id.* In this case, the issue that appellant raises on appeal—whether the state presented sufficient evidence that the requirements for commitment were met—was addressed throughout the commitment hearing. As the following review of the hearing shows, all parties were aware of the issue, including the specific issue of whether appellant was able to provide for his basic needs while in jail.

At the outset of the commitment hearing, the trial court itself outlined the issues before it, explaining them to appellant. In particular, the court explained the three applicable bases for commitment of a person with a mental disorder: that the person is (1) dangerous to himself or herself; (2) dangerous to others; or (3) "[u]nable to provide for basic personal needs and is not receiving such care as is necessary for health or safety." ORS 426.130; ORS 426.005(1)(e). Then, the state called its first witness, Fulks, the precommitment investigator. Fulks testified that, in her opinion, appellant was not a danger to himself or others, but was unable to meet his basic needs. Fulks confirmed that that was the same opinion she expressed in her precommitment

report. On cross-examination, appellant's counsel specifically asked Fulks whether, in preparing her report, she had spoken with staff at the jail where appellant had been in custody. Fulks answered that she had, and appellant's counsel followed up by asking Fulks whether she had received any reports that appellant was not eating or drinking, and Fulks answered that she had not. Appellant's counsel then asked Fulks whether appellant was currently suffering from any medical condition other than his schizoaffective disorder, and Fulks answered, "Not that I'm aware of."

Appellant's counsel pursued the same lines of questioning with each of the state's subsequent three witnesses. He asked appellant's case manager, Johnson, whether appellant, who had been in jail on prior occasions, eats, drinks, and otherwise cares for himself while in jail. Johnson answered that, "in the past, when [appellant] has been in jail, he typically comes out looking the same weight as when he went in" and that she had no reason to think that he was not eating or drinking in jail. Appellant's counsel also asked Johnson whether appellant suffered from any medical conditions that required ongoing care and she answered that she did not know of any, although appellant's doctor had been trying to reach appellant to make sure that there were not any problems from the amputation of his toe. Johnson further stated that she did not have any information indicating that appellant was experiencing any medical issues that needed to be addressed.

Similarly, appellant's counsel asked a jail liaison, Adevai, about appellant's behavior in jail. She responded, "I believe he is drinking and eating. There are no concerns that have come my way that that's an issue at this time." Adevai also said that she had no information regarding whether there were any "after-care requirements for [appellant's] toe amputation."

Finally, appellant's counsel asked appellant's parole and probation officer, Spencer, whether she had any reason to believe that appellant was not eating, drinking, or otherwise caring for himself, and she replied that she had visited the jail and "the only thing" she knew of was that appellant had flooded his cell, "potentially causing * * * things from

the toilet to come out and not be healthy for him or the other people in the cells and that * * * area."

Thus, throughout the presentation of the state's case, appellant's counsel elicited information regarding appellant's custody status and whether his needs for food, water, and medical care were being met.

After the state presented its evidence, the trial court asked the mental health examiner, Wooten, to state his conclusions on the record. *See* ORS 426.110 (for purposes of a civil commitment hearing, "[t]he judge shall appoint one qualified examiner"); ORS 426.120 (examination requirements). Wooten opined that appellant was a danger to himself, a danger to others, and unable to provide for his basic needs and not receiving the care necessary for his health and safety.

Thereafter, in his closing argument, appellant's counsel argued that the state had failed to carry its burden of proving, by clear and convincing evidence, any of the three bases Wooten identified for commitment. Regarding whether the state had presented sufficient evidence that appellant was unable to meet his basic needs, appellant's counsel relied on the information he had elicited about appellant's behavior in jail and specifically pointed out that there was no evidence that appellant had been refusing food or water:

"So Your Honor, this is one of those very difficult cases where I—I do think that the State has met its burden to show that my client suffers from a mental illness, and it's a very unfortunate case in that respect, but I don't believe that they have (inaudible) sufficient evidence to allow the Court to find by clear and convincing evidence that he is unable to provide for his basic needs, or that he poses a risk to himself or to other people.

"I can—I can only speculate as to why Mr. Wooten has reached the conclusion as to why [appellant] poses a threat to other people, or to himself. I—I think it has to do with the fire that was supposedly set by [appellant]. But I—I think even on that point we would need further evidence as to the circumstances of that fire, what was going through— what [appellant] was thinking and—and what the events surrounding that were like.

"As for the basic needs, the law—case law is very clear on this. *Basic needs, of course, refers to accessing food, accessing water, accessing necessary medical care to prevent imminent physical—well, a serious harm to the individual. And I don't think that the State has shown that today.* All of the witnesses today have testified that—that [appellant] has experience as a homeless individual, that he has struggled in getting into shelters, that he has struggled maintaining his housing for sure, but at the same time he's been resourceful. He has located food, he has located water, *he has not refused food, not refused water.* And he has shown himself capable of locating sufficient shelter when needed.

"As far as medical care, there's been a lot of talk about an amputated toe from July, but there's been no evidence that that continues to—to be an ongoing medical concern that he is ignoring. [Appellant] had an infection, that infection got worse, it led to such a severe infection that his toe had to be amputated, but we have no evidence that there is need for after-care, we have no evidence that he is otherwise affected to the degree that his mental illness will prevent him from seeking the care necessary to—to address that.

"So Your Honor, I just don't think we have enough here for the Court to conclude that [appellant] is unable to meet his basic needs. I know that there's an impulse by the County officials to well basically help this man help—or help this man when he can't help himself. And I—I think it's a really noble impulse, but I think the—the evidence we have here is just insufficient for the Court·to—to agree and to find that he cannot meet his basic needs.

"*So Your Honor, we'd ask that you find yes that he— [appellant] suffers from a mental illness, but no he does not pose a risk to himself, he does not pose a risk to others, and he is not unable to meet his basic needs. I—I—there's just—there's not enough evidence to conclude that here Your Honor.*"

(Emphasis added.)

The trial court committed appellant on the grounds that he was a danger to himself, a danger to others, and unable to provide for his basic needs. In doing so, the court specifically referenced dangers that it believed existed while appellant was in jail. In concluding that appellant was a

danger to himself, the court relied on evidence about appellant's behavior in jail, and, in concluding that appellant was a danger to others, the court stated that appellant was a danger to other inmates in jail, as well as to the public, if he was released:

> "I was particularly troubled by Ms. Adevai's description of the occurrences in the jail with the plugging of the—the toilets and walking through the sewage and with a toe that may or may not need continued medical attention. And covering your personal belongings in urine (inaudible) and not—I mean all that to me seems like he's dangerous to himself and his own welfare by doing that to his living situation. And—and also, that plus some fire setting behaviors I think poses a risk of danger to—to other people and not just the other inmates in the jail where he is now, but to occupants of apartment buildings or people who want to ride public transportation who have to be concerned about a homeless mentally ill person starting fires next to their bus stop or their dwelling."

The majority concludes that appellant's counsel's argument in the trial court was insufficient to preserve his appellate challenge to the sufficiency of the state's evidence. 282 Or App at 864. Under our case law, that is incorrect. We have held, for example, that an appellant preserved his sufficiency of the evidence challenge by repeatedly saying that he did not need to go to the hospital during the hearing. *State v. A. S.*, 211 Or App 100, 101, 153 P3d 151 (2007). We have also held that an appellant's argument that the record lacked sufficient evidence to show he suffered from paraphilia because the state did not present evidence sufficient to establish one of the "essential features" of the disorder was preserved by the appellant's argument in his opening statement that he was not subject to an involuntary mental commitment. *State v. R. D. G.*, 196 Or App 57, 61 n 2, 100 P3d 750 (2004). Under *A. S.* and *R. D. G.*, appellant's appellate argument is preserved.[2]

---

[2] The majority states that *A. S.* and *R. D. G.* are not analogous. 282 Or App at 869 n 3. I respectfully disagree. *A. S.* and *R. D. G.* are on point and controlling. They stand for the proposition that a general objection to commitment is sufficient to preserve an appellate challenge to the sufficiency of the evidence for commitment, even if the specific argument regarding the sufficiency of the evidence was not made in the trial court. But even if a higher standard of preservation is

Furthermore, appellant's counsel did more than required under *A. S.* and *R. D. G.* to preserve appellant's challenge to the sufficiency of the state's evidence. As recounted above, at the conclusion of the hearing, appellant's counsel challenged each of the three possible bases for commitment, specifically referring to the state's evidence (or lack thereof). During the commitment hearing, appellant's counsel made it clear that he was disputing that appellant was unable to provide for his basic needs. Appellant's counsel repeatedly raised the issue of whether appellant's basic needs were being met in jail, asking each of the state's witnesses whether appellant was refusing food and water in jail and whether he had any physical conditions that were not being treated. And, in closing argument, appellant's counsel pointed out that there was no evidence that appellant was refusing food or water or that he was ignoring a medical condition. Thus, the state and trial court were on notice that appellant's position was that, given his current conditions and circumstances, including the fact that he was in jail, he was not subject to commitment on the ground that his basic needs were not being met.

The purposes of preservation are served when the opposing party and the trial court have an opportunity to respond to an issue. Here, the parties and the court were aware of the legal issues before the court; the court itself had outlined them at the beginning of the hearing. They were also aware that appellant challenged the sufficiency of the state's evidence, including the state's evidence that appellant was unable to meet his basic needs, given the fact that he was in jail. Indeed, the court itself based its conclusions about appellant's dangerousness on the risks that it believed existed while appellant was in jail. This is not a case where the trial court would be surprised to have us address the

---

required, it was met in this case, where appellant's counsel repeatedly raised in the trial court the same issue he raises on appeal: whether his basic needs were being met in jail. The state was on notice of the issue. If the state had any evidence that appellant was going to be released from jail, it could have presented it, and it was certainly on notice of the need to do so, given that appellant was disputing the state's basic-needs theory of commitment by asking all of the state's witnesses questions concerning whether defendant's basic needs were being met in jail.

issue of whether the state presented sufficient evidence that appellant was subject to commitment despite being in jail; the court itself concluded that he was. Therefore, I conclude that appellant's appellate argument is preserved.

Because I conclude that appellant's appellate argument is preserved, I turn to the merits of that argument. For the reasons explained below, I would conclude that, as appellant argues, the state failed to present sufficient evidence to commit appellant.

I begin with an analysis of the sufficiency of the state's evidence that appellant was a danger to himself. To establish that a person is a danger to self, ORS 426.005 (1)(e)(A), the state must establish that "the person's mental disorder would cause him or her to engage in behavior that is likely to result in physical harm to himself *** in the near term." *State v. B. B.*, 240 Or App 75, 82, 245 P3d 697 (2010) (quotations omitted). The state must present evidence of a "particularized and highly probable threat to [the person's] safe survival, including a risk of substantial harm, in the near future." *Id.* at 84 (internal quotations and citations omitted). When the potential harm is related to a person's medical condition, evidence that the person has refused treatment for that condition is insufficient to establish a "danger to self" without evidence of the person's condition at that time of the hearing or of the probable consequences of the lack of treatment. *Compare State v. T. L. H.*, 202 Or App 63, 65, 121 P3d 17 (2005) (evidence insufficient to establish woman diagnosed with schizoaffective disorder and diabetes, who refused treatment for both the disorder and diabetes, was a danger to herself when the record did not "disclose the nature or severity of [her] condition" or the probable consequences of her refusal), *with State v. C. C.*, 258 Or App 727, 736, 311 P3d 948 (2013) (evidence sufficient to establish that a insulin-dependent individual's refusal to take insulin was a danger to self when the state presented evidence that his delusions were "inextricably tied" to his refusal of treatment, that individuals with insulin-dependent diabetes are at risk of substantial harm, including diabetic coma and death, and that the appellant's blood sugar was dangerously high at the time of hospitalization).

In this case, the court determined that appellant posed a danger to himself by creating unsanitary living conditions in his cell. The determination was based on the court's concern for appellant's toe. However, the record does not contain any evidence of the actual condition of appellant's toe at the time of the hearing. Indeed, the trial court noted that appellant's toe "may or may not" need continued medical attention. Further, the state did not present any evidence of the probable consequences of another infection. Thus, the record is insufficient to support a conclusion that, even if appellant engaged in unsanitary behavior, he would be at risk of an infection, which, in turn, would threaten his survival.

I turn next to the trial court's conclusion that appellant posed a danger to others. To establish that a person is a danger to others, ORS 426.005(1)(e)(A), "the state must establish that actual future violence is highly likely." *State v. M. A.*, 276 Or App 624, 629, 371 P3d 495 (2016) (internal quotations and citations omitted). The likelihood of an appellant's future dangerousness must be "based on his condition at the time of the hearing in the context of his history." *State v. D. S.*, 243 Or App 328, 333, 258 P3d 1250 (2011). "Conclusions based on conjecture as to whether appellant poses a danger to others are insufficient." *State v. Woolridge*, 101 Or App 390, 394, 790 P2d 1192, *modified on recons*, 102 Or App 559, 794 P2d 1258 (1990). In this case, the state failed to present legally sufficient evidence that appellant posed a nonspeculative danger to other inmates. Although the record contains evidence that appellant engaged in fire-starting activities outside of jail, it does not contain any evidence that appellant tried to set fires in jail or engaged in any other conduct that was likely to injure other inmates. Additionally, because there was no evidence of appellant's impending release from jail, his history of fire-setting outside of jail was insufficient to establish that, at the time of the hearing, he posed a nonspeculative danger to the public in the near future. *See State v. Jensen*, 141 Or App 391, 395, 917 P2d 541 (1996) (evidence insufficient to establish the appellant was a danger to others when state did not show that his release was imminent).

Finally, I consider the trial court's conclusion that appellant was unable to provide for his basic personal needs

and was not receiving care necessary for his health or safety. To establish that a person is unable to provide for his basic needs, ORS 426.005(1)(e)(B), the state must establish that, "'due to a mental disorder, *there is a likelihood that the person probably would not survive in the near future because the person is unable to provide for basic personal needs and is not receiving care necessary for health or safety.'*" *Jensen*, 141 Or App at 394 (quoting *State v. Bunting*, 112 Or App 143, 146, 826 P2d 1060 (1992)) (emphasis in *Jensen*). In *Jensen*, we held that a person who was criminally incarcerated at the time of his civil commitment hearing could not be committed on a "basic needs" basis, absent a showing of why, notwithstanding incarceration, the person probably would not survive in the near future. *Id.* at 394-95. We noted that local correctional facilities are statutorily required to provide for the health and safety of the prisoners in their custody. *Id.* (quoting ORS 169.076 and ORS 169.140). Because there was no evidence of the appellant's release date and the state did not demonstrate that the appellant probably would not survive while incarcerated, we concluded that the evidence was insufficient to support a "basic needs" commitment. *Id.* at 395. In this case, the court based its "basic needs" commitment on findings that appellant would probably not survive if he were released at the time of the hearing. Because there was no evidence of appellant's release date, or that he was "not receiving care necessary for health or safety" in jail, I conclude that the court's "basic needs" determination is precluded by *Jensen*.

In sum, appellant preserved his argument that the evidentiary record is legally insufficient to establish that appellant was a danger to himself or others or unable to provide for his basic needs and that argument is correct. Therefore, the trial court erred by committing appellant, and I would reverse.