Argued and submitted May 6, 2009, at Silverton High School, Silverton, affirmed
April 7, 2010

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## BONNIE LOU WALKER,
*Defendant-Appellant.*

Jackson County Circuit Court
065202FE; A136541

229 P3d 606

Bronson D. James, Chief Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Susan D. Howe, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Erika L. Hadlock, Acting Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rhoades, Judge pro tempore.

HASELTON, P. J.

## HASELTON, P. J.

Following the trial court's denial of her motion to suppress evidence, defendant entered a conditional guilty plea to unlawful possession of methamphetamine, ORS 475.894, reserving her right to appeal the trial court's ruling on that motion. ORS 135.335(3).[1] The trial court denied suppression on two alternative, and independently sufficient, grounds: (1) the search of defendant's purse was lawful as within the scope of a warrant to search the premises for evidence relating to a burglary; and (2) defendant validly consented to the search of her purse. As amplified below, we conclude that defendant's sole challenge to the trial court's determination that the search was within the scope of the warrant is unreviewable because it was not preserved before the trial court. Accordingly, we affirm.

We are bound by the trial court's findings of historical fact to the extent that there is sufficient evidence in the record to support those findings. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). If there are pertinent issues about which the trial court did not render findings, and there is conflicting evidence in the record, we will presume that the trial court resolved those conflicts in the evidence consistently with its ultimate conclusion. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). On June 7, 2006, officers of the Medford Police Department obtained a search warrant authorizing them to search a residence on Plum Street for evidence of first-degree burglary, ORS 164.225, and first-degree theft by receiving, ORS 164.055; ORS 164.095. The warrant specifically listed digital video disks (DVDs), a DVD player, a compact disk/DVD carrying case, a pair of size nine shoes, a "flip" cellular phone, and personal identification papers for a named, male person, as the objects of the search. The warrant did not authorize the search or seizure of any persons located at the residence.

---

[1] ORS 135.335(3) provides:

"With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion. A defendant who finally prevails on appeal may withdraw the plea."

Detectives Hatten and McCurley, who worked for the Medford Police Department's "Gang/Street Drugs Unit" (GSD), were recruited to assist with the execution of the warrant. Hatten and McCurley had information, stemming from their involvement with an independent GSD investigation, that one of the occupants of the Plum Street residence, Baker, who was defendant's boyfriend, was dealing methamphetamine. Before the search warrant was executed, McCurley secured permission from the detective in charge of the warrant so that Hatten and he could "deal with the * * * Baker portion of [it]."

The next day, on June 8, 2006, the officers went to the Plum Street residence to execute the search warrant. At least five officers in uniforms or in "raid" vests, with their guns drawn, entered the residence through the front door in single file and immediately detained and handcuffed all of the people inside. Defendant was found inside Baker's bedroom.

After all of the occupants were detained, the police put their guns away and ushered everyone—at least five people in total—to a patio outside of the house. There, the officers read the search warrant to the group, collectively *Mirandized* them, and frisked each person for weapons.[2] The officers then proceeded to interview the detainees to "figure out who lives there" and to run their information to "make sure someone doesn't have an outstanding warrant."

McCurley testified that he and Hatten "immediately * * * got consent from [Baker] * * * to search his room" because "we knew based on a prior CRI purchase of drugs from the residence from * * * Baker that [he would be] the

_____

[2] There is conflicting evidence in the record as to whether defendant was released from handcuffs after the patdown search or if she remained in handcuffs for the duration of the encounter. Further, it appears that the trial court deemed the duration of the handcuffing, including whether defendant may have been handcuffed at the time her consent was elicited, as being immaterial to the validity of her consent. Although the duration of the handcuffing might well bear on whether defendant was unlawfully detained at the time she gave her consent, *see, e.g., State v. Hall*, 339 Or 7, 17-18, 115 P3d 908 (2005), it is immaterial to whether the search of defendant's purse was independently lawful under the warrant. Accordingly, given our analysis and disposition, we need not address the disputes about the duration of handcuffing, much less remand to the trial court to determine those disputes whose resolution the trial court effectively bypassed in the first instance.

most likely person that would have narcotics." During the search, McCurley found a purse, which the officers believed belonged to defendant. Hatten then left the room, found defendant on the patio, and "waved her away from the other people" over to where he was standing in the kitchen. After defendant walked over, Hatten "told her we found her purse in [Baker]'s room * * * and asked if we could look in her purse. And I told her what we were looking for—for drugs." Defendant consented to the search of her purse. The subsequent search revealed a glass pipe with a residue that field-tested positive for methamphetamine.

Defendant was indicted for the crime of unlawful possession of methamphetamine, ORS 475.894. She subsequently filed a motion to suppress the evidence discovered during the search of her purse.

The content of defendant's motion to suppress and supporting memorandum, as well as the colloquy with the court at the time of the suppression hearing, is critical to our determination that defendant did not cogently raise, and present, her present appellate contention that the search of her purse violated Article I, section 9, of the Oregon Constitution as exceeding the scope of the warrant, because, even though she was not in possession of the purse at the time of the search, it nonetheless constituted a search of her "person."[3] Accordingly, we recount that content in detail.

Defendant filed a two-page motion to suppress, invoking, without differentiation, the Fourth Amendment to the United States Constitution and Article I, section 9, as well as ORS 133.565[4] and ORS 133.693.[5] Defendant's "points

---

[3] Article I, section 9, provides, in part:

"[N]o warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[4] ORS 133.565 provides, in part:

"(2) The warrant shall state, or describe with particularity:

"* * * * *

"(b) The name of the person to be searched, or the location and designation of the premises or places to be searched;

"(c) The things constituting the object of the search and authorized to be seized[.]"

[5] ORS 133.693(4) provides:

and authorities" listed five decisions of the United States Supreme Court and two dozen Oregon appellate decisions.[6]

In addition, defendant filed a seven-page supporting memorandum of law, which asserted two overarching propositions: (1) "defendant and her belongings were unlawfully seized during the execution of the search warrant"; and (2) "defendant's consent to [the] search [of] her purse was not voluntary." (Capitalization omitted.) Defendant's argument in support of the first proposition began with the following paragraph:

> "The search warrant, as is evidenced at Exhibit A, is void of any language authorizing officers to seize persons that may be present at the residence during its execution nor does the search warrant authorize a search of the personal effects belonging to persons who may be visiting the dwelling at the time the warrant is executed. The warrant was plainly invalid in regards to the seizure and search of defendant and her belongings."

Defendant did not differentiate between the Fourth Amendment and Article I, section 9, in asserting that proposition. Nor did defendant cite any Oregon (or federal) case law as supporting that contention.

In the seven succeeding paragraphs of the memorandum, defendant did cite federal and/or state decisions as support for general propositions pertaining to the scope of warranted searches, *viz.*, that "[o]fficers exceeded the scope of a search warrant by searching for and/or seizing items not described in the warrant"; and "[a] search warrant authorizing a search of a particular premise[s] does not allow authorities executing that warrant to search people who happen to be on the premises at the time unless the warrant also authorizes the search of named persons." However, at no point did defendant present the trial court with *any* analysis as to why, even if a search of persons, including nonresidents, would not be within the scope of a warrant to search the

---

"Where the motion to suppress challenges evidence seized as the result of a warrantless search, the burden of proving by a preponderance of the evidence the validity of the search is on the prosecution."

[6] With one nonsubstantive exception, none of those federal or state decisions was cited in defendant's briefing on appeal.

premises, their personal effects that could contain items identified in the warrant would be similarly excluded.

In particular, defendant did not refer to any of the contending lines of authority addressing that question under the Fourth Amendment, as described in detail in *State v. Reid*, 190 Or App 49, 77 P3d 1134 (2003), *rev den*, 337 Or 182 (2004). Much less did defendant refer to our analysis and result in *Reid*, which antedated defendant's motion to suppress by nearly four years.[7] Finally, and most significantly for present purposes, defendant made no effort to explain why a correct application of Article I, section 9, would compel a different result with respect to a search of a nonresident's personal effects under the Oregon Constitution than under the Fourth Amendment, as determined in *Reid*.

Unsurprisingly, given the generic content of defendant's submissions, the colloquy between the court and counsel during the subsequent suppression hearing did not touch on the question of whether, under Article I, section 9, a search of a nonresident's personal effects exceeded the scope of the warrant when, as here, the personal effect (defendant's purse) could have held items identified in the warrant (*e.g.*, DVDs). Rather, the court and counsel focused on two entirely different concerns. First, was defendant's consent invalid as involuntary or as the unattenuated product of an unlawful seizure of her person? Second, was the search of the purse beyond the scope of the warrant because the officers were, at least arguably, searching only for drugs and not for evidence of the burglary?

---

[7] In *Reid*, we addressed whether, under the Fourth Amendment, the search of a jacket (which the owner was not wearing) was within the scope of a search warrant where the jacket's owner was not named in the warrant and was visiting the premises at the time the warrant was executed. 190 Or App at 51. We concluded that, under the Fourth Amendment, the search was within the scope of the warrant because the owner was not in "actual physical possession" of his jacket at the time of the search. *Id*. at 66-67 (citing *Wyoming v. Houghton*, 526 US 295, 119 S Ct 1297, 143 L Ed 2d 408 (1999)). In so holding, we rejected an alternative formulation—*viz*., the "actual notice" test—under which the lawfulness of the search would have depended on whether the officers executing the search warrant had actual notice of the owner's status as a visitor to the premises. *Reid*, 190 Or App at 57-60, 66. In *Reid*, the defendant did not "invoke, much less make any distinct argument under, Article I, section 9," and, thus, we "impl[ied] no view as to the proper disposition under the Oregon Constitution." *Id*. at 51 n 1.

Accordingly, defendant's counsel's arguments to the court referred only to those two matters:

"[The officers] did not even know what they were searching for. They testified that they were—that they took over a narcotics investigation once they got in the house as extra bodies for search of evidence of a burglary. Certainly they could search for evidence of what is in a search warrant in any place that—that evidence of that crime could be found. So—you know—if they are searching for gold coins they could look in a coin purse. They were not. They were executing a narcotics investigation at this point. But that is kind of a side point. Basically I would argue that [defendant] was illegally detained. She should have been released as soon as the house was cleared and the officer safety rationale—which is the only rationale to allow for her seizure—the exigent circumstance was dissipated and they put their guns away. Everyone was safe—they were outside. [Defendant] should have been told she was free to leave. She was not. She was kept in handcuffs—actually brought back in the house and then asked for consent to search her purse. We would argue that not only was she detained illegally—her consent was not voluntary—she was in handcuffs—she had been shown guns. It is her—her consent was not—was not voluntary. It is an exploitation of an illegal seizure of her being forced to stay at the house longer than was necessary to justify her seizure. * * * So, in this case, she was kept illegally, far beyond what it took to satisfy the officer safety rationale, not to mention the fact that this was a fishing expedition to find narcotics."

The trial court then ruled from the bench, concluding that defendant's consent was "voluntary," but expressing concerns about whether the officers' subjective motivation to search for drugs rendered the search of the purse beyond the scope of the warrant:

"I do not find that her being handcuffed or required to sit there for 45 minutes according to her testimony—or even an hour—is so coercive as to be inappropriate. * * * I think they are entitled to temporarily detain people while they determine who they are and whether or not they should be allowed to leave. So I do not think that that is inappropriate.

"Her consent was voluntary. I have no doubt about that.
* * *

"However, * * * I do not see anything in [the warrant] about drugs. Now these officers knew this was a drug house apparently so their interest was in drugs. But they went into a closed container that nobody testified could have held any of the things that were looked for like a DVD player * * *. They were just looking. And since it was in Mr. Baker's room—who they knew to be a drug dealer— they were looking for drug stuff. I just don't know how that works. * * * [S]o, I am asking both of you to find me some evidence on that issue which I find to be the only interesting issue in this case. The others I am ruling against * * * defendant on those. The voluntariness and the detention which I do not feel was inappropriate."[8]

Defendant did not take issue with any failure by the trial court to address whether, regardless of the officers' subjective motivation, the search of the purse would be beyond the scope of the warrant because nonresidents' personal effects were not encompassed by the warrant, even if they might contain items identified in the warrant.

Responding to the trial court's invitation, defendant submitted a supplemental memorandum, elaborating on the argument that she made during the motion to suppress hearing: that the officers unlawfully "used the burglary warrant as a pretext to enter into [the Plum Street residence] and conduct a drug investigation," for which they lacked probable cause. Defendant also requested that the trial court reconsider its conclusion that defendant was not illegally detained. In its response, the state contended that the officers' search fell within the scope of the warrant because the objects of the warrant, DVDs and a cell phone, "could easily be concealed in a purse," and that the search was independently valid based on defendant's consent.

Ultimately, the trial court issued a written order denying defendant's motion to suppress. That order contained the following "Findings of Fact and Conclusions of Law":

---

[8] It is unclear why the trial court, having determined that defendant had validly consented to the search of her purse, invited further submissions as to whether the search was within the scope of the warrant.

"1.   The officers were in the residence pursuant to a search warrant.

"2.   The defendant's purse could have held some of the items listed in the search warrant.

"3.   Although the officers knew the house was a drug house, and wanted to find drugs, this does not stop them from pursuing the search into places where items in the warrant could be.

"4.   The defendant's consent was voluntary. It was not obtained under coercive [*sic*] or circumstances so compelling that her will was overborne."

After the trial court denied defendant's motion to suppress, defendant entered a conditional guilty plea, specifically reserving, in writing, her right to appeal the judgment and seek review of the trial court's adverse ruling on that motion. ORS 135.335(3). This appeal followed.

On appeal, defendant assigns error to the trial court's denial of her motion to suppress. She renews the arguments she made before the trial court regarding the validity of her consent. In addition, defendant advances for the first time a cogent argument that the search of her purse fell outside the scope of the search warrant because, even though she was not in possession of the purse at the time of the search, it nonetheless constituted a search of her "person." As support for that proposition, defendant invokes *Childers v. State*, 158 Ga App 613, 614, 281 SE2d 349, 352 (1981), in which the Court of Appeals of Georgia held that a search of the defendant's purse, pursuant to a warrant search of a residence, was an unconstitutional search of the defendant's person. In her appellate brief, defendant does not renew the contention, which the trial court rejected, that the search of the purse exceeded the scope of the warrant because the officers' subjective motivation was to search for drugs only, and not for evidence of the burglary.

The state counters that defendant's consent was valid and, particularly, that there was no coercion or predicate unlawful seizure by the officers. Further, with respect to whether the search was within the scope of the warrant, the state invokes *Reid*.

■ With the issues so framed and joined, we must affirm the trial court's denial of suppression if either of the court's alternative and independently sufficient grounds for that ruling was correct. That is, the search of the purse was lawful if either (1) that search was authorized under the warrant or (2) the search was pursuant to defendant's valid consent. Further, the only challenge that defendant raises on appeal with respect to the former is a contention implicating a very substantial question of first impression under Article I, section 9, that was not cogently developed and preserved before the trial court. Because defendant raises no cognizable challenge to an independent and adequate ground for the trial court's denial of suppression, we affirm.

■ In so holding, we appreciate that the state has not urged nonpreservation. Nevertheless, we have a prudential obligation to determine *sua sponte* whether a contention has been preserved for appellate review. *State v. Wyatt*, 331 Or 335, 345-47, 15 P3d 22 (2000). That obligation arises from considerations of jurisprudential comity and procedural fairness. *See, e.g., O'Hara v. Board of Parole*, 346 Or 41, 47, 203 P3d 213 (2009) ("Rules of preservation in court proceedings serve * * * [to] encourag[e] the parties to sharpen the issues and to present them fully and fairly to the trial court * * * so that the trial court has an opportunity to make an informed ruling and develop an adequate record and the opposing party and the reviewing court are not taken by surprise later."); *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008) ("Preservation gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal.").

■ Consistently with those dictates, to preserve an issue for appellate review, a party must explain its position specifically enough "to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *Wyatt*, 331 Or at 343. As pertinent here, a defendant must cogently articulate before the trial court his or her position as to why a particular official action constitutes an unlawful search as a prerequisite to appellate review. *See, e.g., State v. Corbin*, 233 Or App 113, 224 P3d 705 (2009) (the defendant, who had

argued to the trial court that a search could not be justified as a search incident to an arrest for trespass, but never contended that that was, at least in part, because the police lacked probable cause to believe he had committed a trespass, could not raise that contention for the first time on appeal); *State v. Amador*, 230 Or App 1, 213 P3d 846 (2009), *rev den*, 347 Or 533 (2010) (where the defendant's sole contention before the trial court dealt exclusively with whether the officer exceeded the *scope* of the traffic stop, assertion that officer had unlawfully extended the *duration* of the encounter was unpreserved for appellate review).

Here, defendant failed, in two related respects, to preserve her present challenge regarding the scope of the warrant. First, defendant, after advancing a single, generic and conclusory proposition, never adduced any authority for that proposition, never developed or reiterated it in argument—instead, focused exclusively on qualitatively different contentions—and, ultimately, never took issue with the trial court's failure to address that matter. Second, defendant's appellate position is predicated exclusively on the Oregon Constitution and yet, before the trial court, defendant made no effort to differentiate between the proper analysis under the Fourth Amendment (or various other state constitutions) and that under Article I, section 9. *See, e.g.*, *State v. Riggs*, 143 Or App 427, 430-31, 923 P2d 683 (1996), *rev den*, 325 Or 247 (1997) (a party must "clearly present" a distinct method of state constitutional analysis to preserve that state constitutional claim for appeal); *see also State v. Mendez*, 308 Or 9, 19, 774 P2d 1082 (1989) (declining to consider the defendant's state constitutional claim where the defendant failed to brief or argue that the state constitutional analysis differed from that under the federal constitution).

These are not abstract or academic matters of form over substance. Rather, as we have endeavored to emphasize in explaining principles of preservation, defendant's failure in these respects had, and has, profound practical consequences. As our analysis in *Reid* exemplifies, the question of whether a warrant to search a premises authorizes a search of a nonresident's personal effects is close and difficult, generating contending formulations, whose application may depend on such fact-specific inquiries as (1) the defendant's

actual relationship to the premises, (2) the officers' actual or constructive knowledge of that status, (3) the defendant's interest in the items searched, and (4) the defendant's physical proximity to, and ability to exercise control over, the item searched. *See, e.g., Reid,* 190 Or App 49 (describing various formulations under state and federal law). *See generally* Diane L. Schmauder, Annotation, *Propriety of Search of Nonoccupant Visitor's Belongings Pursuant to Warrant Issued for Another's Premises,* 51 ALR 5th 375 (1997).

Here, no such record was developed in the trial court. Nor was the trial judge given a fair opportunity to address the constitutional contention that defendant now advances as a basis for reversal. *See O'Hara,* 346 Or at 47. Accordingly, because defendant failed to preserve her sole challenge to the trial court's determination that the search of her purse was authorized as within the scope of the warrant, an unchallenged independent and adequate ground supports the trial court's denial of suppression.

Affirmed.