Filed: July 28, 2011

IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON,

Respondent on Review,

v.

BONNIE LOU WALKER,

Petitioner on Review.

(CC 065202FE; CA A136541; SC S058548)

En Banc

On review from the Court of Appeals.*

Argued and submitted January 13, 2011.

Bronson D. James, Bronson James, LLC, Portland, argued the cause and filed the briefs for petitioner on review.

Jamie K. Contreras, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

LANDAU, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

*Appeal from Jackson County Circuit Court, Raymond B. White, Judge. 234 Or App 596, 229 P3d 606 (2010).

LANDAU, J.

In this criminal case, the police obtained a warrant to search a house for stolen property. When they arrived at the house to execute the warrant, they encountered defendant. They placed defendant in handcuffs, gave her *Miranda* warnings, and took her outside while they searched the house. When they discovered what appeared to be defendant's purse in the house, they asked for permission to search its contents. Defendant agreed, and police found methamphetamine inside the purse. Based on that evidence, she was charged with possession of methamphetamine. Defendant moved to suppress the evidence. The trial court denied the motion on the grounds that defendant consented to the search and, in the alternative, that the search of the purse was authorized by the warrant. Defendant appealed, and the Court of Appeals affirmed on the ground that the warrant authorized the search, because defendant, in the court's view, had failed to preserve her contention to the contrary.

We hold that defendant adequately preserved her contention that the search was not authorized by the warrant, but that she failed to meet her burden of proving that the warranted search was unlawful. We therefore affirm, albeit on different grounds.

## I. BACKGROUND

A. *The Search*

We recite the facts consistently with the trial court's findings of historical fact if supported by evidence in the record. *State v. Hall*, 339 Or 7, 10, 115 P3d 908 (2005). The Medford Police Department obtained a warrant to search a house for property stolen in a burglary, including DVDs, a cell phone, and personal identification.

1

No party was named in the warrant.  Two narcotics detectives, Hatten and McCurley, were asked to assist with the execution of the warrant.  Based on information from a confidential informant, both detectives suspected that one of the residents, Cecil Baker, was selling drugs from the house.  No separate warrant was obtained authorizing the search for drugs, however.

Hatten, McCurley, and several other detectives went to the house to execute the warrant.  They entered the home, guns drawn.  They found at the house Baker, along with a number of other individuals.  Among those other individuals was defendant, whom the officers believed to be Baker's girlfriend.  The officers found defendant in Baker's bedroom.   The police moved all of the occupants to a side patio area outside.  They handcuffed all of the occupants, including defendant, and patted down each person for weapons.  One of the officers outside then read the search warrant aloud to the handcuffed occupants and gave *Miranda* warnings to the entire group.  Meanwhile, Hatten and McCurley asked Baker for consent to search his bedroom, and he agreed.

Hatten and McCurley found a purse in Baker's bedroom and assumed that it belonged to defendant because of her relationship with Baker.  Hatten went back to the patio and waved for defendant to come into the house to speak with him.  Hatten told defendant that he believed that he had found defendant's purse in Baker's room and asked permission to search the purse.  While he was speaking to her, defendant told Hatten that "she didn't do anything so she didn't know why she had to be there."  Nevertheless, she consented to the search of her purse.

Based on that consent, McCurley searched the purse and found a glass pipe

2

with a white powdery residue inside. It field-tested positive for methamphetamine. Hatten brought defendant back to Baker's bedroom, where McCurley read *Miranda* warnings to her a second time and then questioned her. Defendant made several incriminating statements, resulting in her arrest for unlawful possession of methamphetamine, ORS 475.894.

B.     *Trial Court Proceedings*

Before trial, defendant moved to suppress the evidence found in her purse and her later statements to McCurley. She argued that the search violated both the state and federal constitutions because her purse was outside the scope of the warrant and because her consent either was not voluntary or was obtained by the police through the exploitation of prior unlawful conduct.

Regarding defendant's first argument -- the scope of the warrant -- defendant asserted:

"The search warrant * * * is void of any language authorizing officers to seize persons that may be present at the residence during its execution nor does the search warrant authorize a search of the personal effects belonging to persons who may be visiting the dwelling at the time the warrant is executed. The warrant was plainly invalid in regards to the seizure and search of defendant and her belongings."

In support, defendant cited the Fourth Amendment to the United States Constitution, Article I, section 9, of the Oregon Constitution, and ORS 133.565(2)(b), which sets out the particularity requirements of all search warrants. Defendant then continued:

"A search warrant authorizing a search of a particular premise does not allow authorities executing that warrant to search people who happen to be on the premises at the time unless the warrant also authorizes the search of named persons. *State v. Mickelson*, 18 Or App 647 (1974); *State v.*

3

*Mays*, 19 Or App 518 (1974). A person's mere presence as a houseguest when the house is search[ed] under the authority of a warrant does not automatically give the police the authority to either frisk or search that person. *State v. Meyers*, 55 Or App 370 (1981); *State v. Swibies*, 183 Or App 460 (2002)."

Regarding defendant's second argument -- consent -- she argued that her consent was not voluntary and that, even if it was voluntary, the police obtained her consent through the exploitation of her unlawful detention.

In response to defendant's first argument, the state took the position that the fact that the purse could hold the types of items described in the warrant was entirely dispositive: "Police could validly search defendant's purse under the search warrant. The areas subject to lawful search pursuant to the warrant are defined by the description set forth on the face of the warrant." As for the second argument, the state responded that defendant's consent was voluntary and that there was no unlawful detention.

At the suppression hearing, defendant testified that, at the time the police arrived at Baker's residence, she had been sleeping in the bedroom, but that she had arrived approximately one hour earlier. She said that the police immediately placed her in handcuffs and that she remained in handcuffs the entire time the police were searching the residence, approximately 45 minutes to an hour. She also testified that she remembered being read her *Miranda* rights and that detective Hatten was polite and did not threaten her when he asked permission to search her purse. When asked whether she consented to the search of her purse of her own free will, she responded affirmatively.

Detectives Hatten and McCurley also testified at the hearing. Hatten testified that, although he and McCurley were there to assist in searching for the stolen

4

property, he never saw the warrant and "didn't know the exact property stolen" that he was supposed to be looking for. McCurley testified that he did have a list of stolen property that he was looking for based on the warrant, but that they were also using the opportunity to look for narcotics. In fact, the only place Hatten and McCurley helped to search was Baker's bedroom. Neither detective could remember how long defendant was detained or remained handcuffed.

The trial court found that "[defendant's] consent was voluntary" and that her detention was not "inappropriate." The court did not make a specific finding of fact about how long defendant had been kept in handcuffs on the patio; it concluded that, even if she had been restrained for up to an hour, the restraint was not unreasonable.

The trial court stated that the only "interesting" issue, in its opinion, was "the authority of officers to search for evidence of controlled substances when the search warrant was specifically issued to search and seize evidence of items stolen during a burglary." The trial court requested additional briefing on that issue. In defendant's supplemental memorandum addressing that issue, she did not refer to any arguments under Article I, section 9, focusing instead on arguments under the Fourth Amendment. Ultimately, the trial court denied the motion to suppress, holding that the search of the purse was within the scope of the warrant because it "could have held some of the items listed in the search warrant" and, in the alternative, that the detectives obtained defendant's consent to search her purse.

Defendant entered a conditional guilty plea, reserving the right to appeal the trial court's denial of her motion to suppress.

C.      *Before the Court of Appeals*

On appeal, defendant argued that the trial court erred in denying her motion to suppress for two reasons. First, she argued that, under Article I, section 9, the search of her purse exceeded the scope of the warrant. Defendant argued that her purse was a part of her person and, because the warrant did not authorize the search of nonresident "social guest[s]," the search of her purse was outside the scope of the warrant. Second, she argued that her consent, though voluntary, was obtained through police exploitation of prior unlawful conduct -- specifically, her restraint in handcuffs for an hour for no apparent reason while police searched Baker's residence.

In a written opinion, the Court of Appeals affirmed the trial court's denial of defendant's motion to suppress, holding that defendant failed to preserve her argument that the search was outside the scope of the warrant under Article I, section 9. Specifically, the court held:

> "Here, defendant failed, in two related respects, to preserve her present
> challenge [that, because defendant was a houseguest, the search of her
> purse was outside] the scope of the warrant. First, defendant, after
> advancing a single, generic and conclusory proposition, never adduced any
> authority for that proposition, never developed or reiterated it in argument
> -- instead, focused exclusively on qualitatively different contentions -- and,
> ultimately, never took issue with the trial court's failure to address that
> matter. Second, defendant's appellate position is predicated exclusively on
> the Oregon Constitution and yet, before the trial court, defendant made no
> effort to differentiate between the proper analysis under the Fourth
> Amendment (or various other state constitutions) and that under Article I,
> section 9."

*State v. Walker*, 234 Or App 596, 607, 229 P3d 606 (2010). In particular, the court noted, defendant failed even to cite its earlier decision in *State v. Reid*, 190 Or App 49, 77 P3d

1134 (2003), *rev den*, 337 Or 182 (2004), in which the court rejected, under the Fourth Amendment, precisely the same arguments that she had advanced in this case. The Court of Appeals concluded that, because defendant's challenge to the scope of the warrant was unpreserved, it did not need to address whether consent was a valid alternative theory under which to affirm the trial court.

## II. ANALYSIS

On review before this court, defendant argues that the Court of Appeals erred in holding that her argument that the search of her purse exceeded the scope of the warrant was not preserved and that the court erred in failing to reverse the trial court on the merits of that argument. As to the merits, defendant contends that, under Article I, section 9, a warrant to search premises does not authorize the police to search the possessions of individuals who do not reside at those premises.

The state responds that the Court of Appeals correctly concluded that defendant's argument concerning the scope of the warrant was not preserved. Even if it had been preserved, the state argued, the argument fails because the purse was, in fact, within the scope of the warrant, given that it was a container found in the home that could have contained the types of items that were particularly described in the warrant to search the premises. In the alternative, the state argues, the search was reasonable, under Article I, section 9, because defendant consented to the search.

At the outset, we note that the state has asserted -- and the trial court agreed -- that the search of defendant's purse was justified on two independent grounds, *viz.*, the warrant to search the premises and defendant's consent. On review, we will affirm the

7

trial court's decision to deny defendant's motion to suppress if the state prevails on either ground. In this case, we address only one ground, the warrant to search the premises, because it is dispositive.

A.    *Preservation*

We begin with the issue of preservation. As we have noted, the Court of Appeals concluded that, although defendant did advance the argument that, under Article I, section 9, of the Oregon Constitution, a warrant authorizing a search of the premises does not authorize a search of the personal property of guests, that argument remained inadequately articulated to satisfy the requirements of preservation. Defendant argues that the court erred in reaching that conclusion because she had, in fact, clearly asserted the argument in her motion to suppress.

As a general rule, claims of error that were not raised in the trial court will not be considered on appeal. *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). This court has explained that important policies support the preservation rule. In particular, the rule of preservation "gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal." *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008). The rule also ensures fairness to opposing parties, by requiring that "the positions of the parties are presented clearly to the initial tribunal" so that "parties are not taken by surprise, misled, or denied opportunities to meet an argument." *Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995).

Precisely what suffices to "present[] clearly" a particular position, for

8

preservation purposes, is not something that can be explained by a neat verbal formula. And, in fact, this court has cautioned that "problems * * * may arise if the preservation onion is sliced too thinly." *State v. Amaya*, 336 Or 616, 629, 89 P3d 1163 (2004). Instead, the court has counseled attention to the purposes of the rule and the practicalities it serves. As we explained in *State v. Parkins*, 346 Or 333, 341, 211 P3d 262 (2009), "[u]ltimately, the preservation rule is a practical one, and close calls * * * inevitably will turn on whether, given the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served."

In this case, those policies were sufficiently served. Defendant advanced the argument in her memorandum submitted in support of her motion to suppress that the search warrant that the police executed "is void of any language authorizing officers to seize persons that may be present at the residence during its execution nor does the search warrant authorize a search of the personal effects belonging to persons who may be visiting the dwelling at the time the warrant is executed." Defendant cited in support of that contention both the Fourth Amendment and Article I, section 9. And she cited case law that applied both the state and federal constitutions. As we have noted, it is clear from the state's briefing to the trial court that there was no doubt as to the nature of the argument that defendant was asserting; the state simply took the position that the warrant was controlling regardless of who owned the purse. In our view, defendant "presented clearly" at the trial court level precisely the same issue that she advanced to the Court of Appeals and is now arguing to us.

As we have noted, the Court of Appeals reached a contrary conclusion,

9

based on four considerations: First, defendant "never adduced any authority" for her contention that a premises warrant is insufficient to authorize a search of her personal property; second, defendant "never developed or reiterated" her argument at the hearing on her motion to suppress; third, she "never took issue with the trial court's failure to address th[e] matter" at the hearing; and fourth, she "made no effort to differentiate between the proper analysis" under the state and federal constitutions. *Walker*, 234 Or App at 607. With respect, the Court of Appeals' analysis sets the preservation bar too high.

First, adducing particular authorities is not a prerequisite to preservation. *See Charles v. Palomo*, 347 Or 695, 701, 227 P3d 737 (2010) (citation to particular sources not essential to preserve claim of error). In any event, in this case, defendant did adduce authority for her argument. In her memorandum in support of her motion to suppress, she cited several Oregon Court of Appeals decisions concerning the question whether a premises warrant authorizes the search of a guest. To be sure, she did not cite the most recent authority or the case law closest in point. In particular, as the Court of Appeals noted, she neglected to cite a Court of Appeals decision directly addressing her argument under the Fourth Amendment. But the fact that a party neglects to cite every relevant appellate court decision does not mean that the argument has not been sufficiently brought to the attention of the state and the court to enable the state, if necessary, to make an appropriate record in response and to enable the court to avoid error.

Second, the fact that defendant did not "reiterate" her argument at the

hearing is not dispositive. This court has never required that each and every argument that has been asserted in writing must be repeated orally in court in order for the argument to be preserved. *See, e.g.*, *State v. Roble-Baker*, 340 Or 631, 639-40, 136 P3d 22 (2006) (rejecting contention that, because the defendant did not repeat all contentions raised earlier, those not repeated were not preserved).

Third, the fact that defendant did not take "issue with the trial court's failure to address" her argument likewise is not controlling. Once a court has ruled, a party is generally not obligated to renew his or her contentions in order to preserve them for the purposes of appeal. *See, e.g.*, *State v. Cole*, 323 Or 30, 35, 912 P2d 907 (1996) ("Once an evidentiary ruling is made pretrial, the lack of later relitigation of the same issue * * * does not render any claim of error associated with the ruling unpreserved.").

Finally, the fact that defendant did not "differentiate between the proper analysis" of the issue that she raised under the state and federal constitutions also is not dispositive. The fact that the level of detail or thoroughness with which a party articulates a position may leave something to be desired does not mean that it was insufficient to serve the rule of preservation's pragmatic purposes. The point, as we have explained, is whether a party provides sufficient information to enable opposing parties to meet an objection and the trial court to avoid error.

Particularly in criminal cases, in which there is a premium on considerations of cost and speed, the realities of trial practice may be such that fairly abbreviated short-hand references suffice to put all on notice about the nature of a party's arguments. As this court explained in *State v. Kennedy*, 295 Or 260, 666 P2d 1316

11

(1983), in which the court rejected precisely the same preservation argument that the state advances in this case:

> "We do not lack sympathy for the state's position * * *.  Legal claims raised but not substantially briefed are burdensome to meet and difficult to decide correctly.  * * * On issues new to this state's law, we may prefer principled arguments to mere citations from other jurisdictions, arguments such as both the state itself and other parties have provided in this and in other cases.  * * * The reality is that time for original analysis is scarce, particularly in the ordinary criminal case; and particularly at the trial level, lawyers and courts often depend on the shorthand of case citations in preference to scrutinizing statutes and constitutional principles."

*Id.* at 266.

In explaining its contrary conclusion, the Court of Appeals cited this court's decision in *State v. Mendez*, 308 Or 9, 19, 774 P2d 1082 (1989), as holding that the failure to have argued at trial how analysis under the state constitution differs from analysis under the federal constitution is an impediment to appellate review.  The citation was fair.  *Mendez* does stand for that proposition.  We now conclude, however, that *Mendez* was wrongly decided.

To begin with, in *Mendez*, the defendant at trial objected to the exclusion of certain testimony, *but advanced no state or federal constitutional argument at trial at all.* Then, on appeal, he argued for the first time that the exclusion of the testimony violated both state and federal constitutional confrontation guarantees.  This court declined to address the defendant's state constitutional contention, observing that he "failed to brief or argue any independent state constitutional theory." *Id*. at 19.  The court then examined the defendant's argument under the federal constitution.  But, given that the defendant had failed to advance *any* constitutional contention at trial, this court should not have

12

entertained *any* constitutional claim of error on review, state or federal.

Moreover, a hard-and-fast rule that a failure to assert a difference between state and federal constitutional analysis is an impediment to appellate review is simply incorrect. Indeed, in some cases, this court has concluded that certain parallel provisions of the state and federal constitutions are identical in meaning. *See, e.g.*, *State v. Mai*, 294 Or 269, 272, 656 P2d 315 (1982) ("[W]e construe the state compulsory process clause in the same way as the Supreme Court construe[s] the virtually identical federal counterpart * * *."). The appropriate focus, as our more recent cases make clear, is whether a party has given opponents and the trial court enough information to be able to understand the contention and to fairly respond to it. The necessity of fleshing out a contention with more developed or detailed analysis will depend on the circumstances and the nature of the issue that has been raised. In this case, as we have explained, defendant adequately explained her contention to the trial court. We therefore conclude that the Court of Appeals erred in determining that defendant's challenge to the lawfulness of the search pursuant to the premises warrant was not preserved.

B. *Merits*

Defendant argues that, although the police lawfully obtained a warrant to search the premises, they exceeded the scope of the warrant in executing it by searching her purse. Defendant concedes that the purse was the sort of container in which the items specifically listed in the warrant could have been found. She argues that, nevertheless, the search of the purse should be regarded as outside the scope of the warrant:

"Whether a premises-only warrant contemplated the search of a personal

13

object is a function of the relationship that object has to the premises, as known by the issuing judge at the time the probable cause determination is made. Thus, an issuing judge could contemplate that a premises-only warrant would include objects and containers inside the premises that belong to residents. But, it cannot be said that the issuing judge contemplated the search of persons, or their effects, unknown at the time of the warrant's issuance."

According to defendant, because her challenge is to the scope of the authority granted by the warrant, it is the state that bears the burden of establishing the lawfulness of its search. In this case, she contends, the state failed to meet that burden. According to defendant, the state failed to present any evidence concerning the nature of her relationship to Baker or the premises, whether she was in a romantic relationship with him, whether that relationship was casual or serious, whether she was a mere "social guest, who by happenstance is present when the warrant is executed," or was instead a roommate or resident. "The record is silent on all those questions," defendant asserts, "and the state bears the consequences of that silence." Indeed, defendant goes so far as to assert that, "[u]nder whatever approach this court might announce, the state failed to present sufficient evidence that the search of defendant's purse was permissible under the warrant."

The state responds that the warrant itself authorized the police to search defendant's purse. According to the state, "an executing officer may search all items on the premises that could contain the items listed in the warrant except for items in the physical possession of a person not named in the warrant." In this case, the state contends, defendant does not contest that her purse is the sort of object that police reasonably could conclude contained the items listed in the warrant. That, the state

14

concludes, ends the matter regardless of her relationship to Baker or the premises.

We begin with the issue of who bears the burden of proof. Under Oregon law, the allocation of the burden of proof regarding the lawfulness of a search under Article I, section 9, depends on whether the search was conducted pursuant to a warrant. As this court explained in *State v. Davis*, 295 Or 227, 666 P2d 802 (1983), "warrantless entries and searches of premises are *per se* unreasonable unless falling within one of the few 'specifically established and well-delineated exceptions' to the warrant requirement. The state has the burden of showing that circumstances existing at the time of entry invoke one of th[o]se exceptions." *Id.* at 237 (quoting *Katz v. United States*, 389 US 347, 357, 88 S Ct 507, 19 L Ed 2d 576 (1967)) (citations omitted). When the police have acted under authority of a warrant, however, "the burden is on the party seeking suppression (*i.e.*, the defendant) to prove the unlawfulness of a search or seizure." *State v. Johnson*, 335 Or 511, 520, 73 P3d 282 (2003); *see also* William E. Ringel, *2 Searches & Seizures, Arrests and Confessions* § 20.12 (2011) ("A defendant generally has the burden of showing a constitutional infirmity if a search or seizure was carried out pursuant to a warrant[.]").

The rule that the defendant bears the burden of proving the unlawfulness of a warranted search "derives from the presumption of regularity that arises out of the fact that, in a warranted search, an independent magistrate already has determined that probable cause exists." *Johnson*, 335 Or at 521; *see also* Wayne R. LaFave, 6 *Search and Seizure* § 11.2(b), 42-43 (4th ed 2004) (that the defendant bears the burden "is typically explained on the ground that when the police have acted with a warrant, 'an

15

independent determination on the issue of probable cause has already been made by a magistrate, thereby giving rise to a presumption of legality'" (quoting *Malcolm v. United States*, 332 A2d 917, 918 (DC App 1975))).

Practical considerations also support the rule. Once the state establishes that a search occurred pursuant to warrant, it makes more sense to place the onus on the defendant to establish what went wrong with the issuance or execution of the warrant than to require the state to anticipate the many possible ways that the execution of the warrant could have gone awry, but did not in a particular case. *See* LaFave, 6 *Search and Seizure* §11.2(b) at 55 ("[W]here the prosecution shows the evidence was acquired pursuant to a warrant, it is then more economical to require the defendant to assert what went wrong with respect to the issuance or execution of the warrant than to call upon the state to establish that of all the things which might go wrong, none are present in the instant case."). Among other things, it is the defendant who ordinarily will have the better access to the facts that are relevant to a contention that the execution of the warrant was unlawful. In this case, for example, defendant argues that the search of her purse was not authorized by the warrant because of the nature of her relationship to Baker and the premises, facts that she clearly is in the best position to establish.

Defendant argues for a different allocation of the burden of proof. She contends that, when, as in this case, a defendant asserts that a search exceeded the *scope* of a warrant, the burden should remain with the state to show that the search was valid. Defendant reasons that, if the search exceeded the scope of the warrant, the result is that it was essentially warrantless. The problem with defendant's argument is that it confuses

16

the effect of prevailing on an argument with the burden of proving it in the first place. A defendant, for example, could challenge the *validity* of the warrant itself, and, if successful, the result would be that the search at issue was essentially warrantless. Yet, in such cases, the burden of proving the invalidity of that warrant rests squarely with the defendant. ORS 133.693(3) (the party who moves to suppress evidence obtained pursuant to a warrant on the ground that the warrant was invalid has the burden of proving the invalidity of the warrant); *State v. Sargent*, 323 Or 455, 461, 918 P2d 819 (1996) (same). The same is true in this case.

With that burden in mind, we turn to the parties' arguments on the merits. Whether a premises warrant authorizes police to search the personal property of nonresident "social guests" who happen to be on the premises at the time of execution of the warrant is a question of first impression for this court. It is an issue that has deeply divided other state and federal courts around the country. *See generally* LaFave, 2 *Search and Seizure* § 4.10(b) at 742-48; Zachary H. Johnson, Comment, *Personal Container Searches Incident to Execution of Search Warrants: Special Protection for Guests?*, 75 Temple L Rev 313 (2002).

The division has its genesis in the United States Supreme Court's decision in *Ybarra v. Illinois*, 444 US 85, 91-92, 100 S Ct 338, 62 L Ed 2d 238 (1979), in which the court held that, under the Fourth Amendment, a premises warrant does not authorize police to search persons who merely happened to be on the premises at the time the warrant was executed. Following *Ybarra*, the question arose whether a premises warrant would authorize the search of the *personal effects* of individuals who happen to be on the

17

premises. The Supreme Court has yet to address that issue. In the meantime, a number of schools of thought has emerged, primarily among courts applying the Fourth Amendment.

One school of thought adopts what is known as the "physical possession" or "physical proximity" test. Under that test, the police executing a premises warrant are authorized to examine any item not in the physical possession or immediate proximity of a visitor that either is listed in the warrant or is a container in which such an item reasonably could be located. *See, e.g.*, *United States v. Teller*, 397 F2d 494, 497 (7th Cir), *cert den*, 393 US 937 (1968) (purse that police found on premises that belonged to the defendant was "merely another household item subject to the lawful execution of the search warrant which the federal agents held and were enforcing").

Another adopts what is known as the "relationship test," which focuses not on the mere location of an item of property within the premises but, instead, on the relationship between the owner of such property and those premises. Under the relationship test, police executing a premises warrant are authorized to search possessions of an individual only if the police know that the individual has a sufficient relationship to the premises -- usually characterized as something other than a "mere guest" or a "casual visitor" -- that examination of the individual's possession does not violate the visitor's reasonable expectation of privacy. *See, e.g.*, *United States v. Giwa*, 831 F2d 538, 544 (5th Cir 1987); *United States v. Micheli*, 487 F2d 429 (1st Cir 1973).

Perceived inadequacies of both the physical possession and relationship tests have led to the articulation of a third approach. Under what is known as the "actual

18

notice" test, police officers executing a warrant may search any items that come within the scope of the warrant unless those officers have actual notice that the items belong to a transitory guest or some similar person having no relation to the premises. *See, e.g.*, *State v. Nabarro*, 55 Haw 583, 587, 525 P2d 573 (1974).

That position, however, has led to the adoption of yet others. Courts purporting to apply an actual notice test differ as to the type of notice that suffices to limit authority to search property found on the premises. Some, for example, limit an officer's authority only upon "actual knowledge" that property belongs to a nonresident. *See, e.g.*, *People v. McCabe*, 144 Cal App 3d 827, 830, 192 Cal Rptr 635 (1983). Others hold that an officer executing a warrant cannot examine property otherwise within the scope of the warrant if the officer "knew or should have known" that the property was owned by a guest. *State v. Thomas*, 818 SW2d 350, 360 (Tenn Crim App 1991).

In this case, the state argues for our adoption of the physical possession test, urging as it does that "an executing officer may search all items on the premises that could contain the items listed in the warrant *except for items in the physical possession of a person not named in the warrant*." (Emphasis added.) Defendant, on the other hand, argues for the adoption of a variation of the relationship test.

We need not determine which of the foregoing approaches to the authority of police to search "mere guests" or "casual visitors" when executing a premises warrant is consistent with the requirements of Article I, section 9. That is because, as defendant herself observes, the record is silent about key facts necessary to the determination of the lawfulness of the search of the purse under any of those tests.

Were the court to select the physical possession test, for instance, a key fact would be whether the purse was within defendant's physical possession or control when it was seized. If not, then the warrant would be sufficient to authorize the search as long as the purse could contain the seizable items listed in the warrant. In this case, there is no dispute that, at the time the police seized the purse, it was not in defendant's possession or that it could hold the items listed in the warrant. But, defendant points out, at the time the police originally entered the bedroom, defendant could have been in physical possession of the purse and that she became separated from it only because the police ordered her from the room. The problem is that the record is silent on that point. Given that it is defendant who bears the burden of proof, it is defendant who bears the consequence of that silence.

Similarly, were the court to adopt the relationship test, or the actual notice test, or some variation of either, a key fact would be that defendant actually was a "mere guest" or "casual visitor," as opposed to a resident or roommate. Again, the record is silent on that point. There is evidence that defendant was Baker's girlfriend, that she had been sleeping in the bedroom when the police arrived, and that she had arrived there approximately one hour earlier. Even defendant acknowledges that such evidence is insufficient to establish the nature of her relationship to Baker or the premises. Once again, because it is she who bears the burden of proof, it is she who bears the consequence of the failure of the record to establish that key fact.

We therefore reserve for another day the question whether a premises warrant authorizes the search of the personal effects of individuals who happen to be on

20

the premises when those effects are not in the physical possession of those individuals. Because we conclude that defendant in this case has failed to meet her burden of demonstrating that the search of her purse was not authorized by the warrant, we need not address the parties' arguments about the lawfulness of defendant's consent to search its contents.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.