No. 164      March 6, 2024      449

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of D. T. B.,
a Person Alleged to be Extremely Dangerous
with Mental Illness.

STATE OF OREGON,
*Respondent,*

*v.*

D. T. B.,
*Appellant.*

Marion County Circuit Court
22CC05718; A180044

Audrey J. Broyles, Judge.

Submitted February 8, 2024.

Christopher J. O'Connor and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jona J. Maukonen, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Appellant appeals a judgment committing him to the supervision of the Psychiatric Security Review Board (PSRB) under ORS 426.701, after the trial court determined that appellant is an "extremely dangerous person" within the meaning of that statute. In his sole assignment of error, appellant contends that the trial court erred when it required appellant to appear at his commitment hearing remotely, by video call, from a room at the Oregon State Hospital, instead of allowing appellant to be transported to the courthouse to attend the commitment hearing in person with his counsel, who was present in the courtroom. In support of that contention, appellant raises two arguments: one statutory, based on ORS 426.701(12), and one constitutional, based on his due process rights.[1] We affirm.

*Appellant's Statutory Argument.* ORS 426.701(12) provides that "[u]nless the court orders otherwise or either party objects, any party or witness may attend a hearing held under this section via simultaneous electronic transmission." Appellant contends that the trial court erred because appellant's counsel objected to appellant's remote appearance and ORS 426.701(12), therefore, required that the trial court allow appellant to appear in person. Even assuming that appellant's interpretation of ORS 426.701(12) is correct, appellant's argument is not preserved. *State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011) ("As a general rule, claims of error that were not raised in the trial court will not be considered on appeal."). Further, appellant did not request plain error review, and we therefore decline to address his argument concerning ORS 426.701(12). *State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015) (explaining that "we ordinarily will not proceed to the question of plain error unless an appellant has explicitly asked us to do so").

---

[1] Appellant grounds his due process argument in both the federal and state constitutions, although he does not make discrete arguments under either of those constitutions nor cite any particular constitutional provision. As best we understand the bulk of his due process argument, it is grounded in federal constitutional law. The state responds relying on federal law. Accordingly, we apply well-established federal due process principles in resolving this appeal.

*Appellant's Constitutional Argument.* Appellant next contends that the trial court requiring him to appear remotely violated his constitutional due process rights because "the remote appearance did not ultimately work to achieve a fair hearing." Appellant points to various instances of events in the trial court to support that argument, including two instances of appellant's microphone being muted.[2]

At the outset of the commitment hearing, the trial court invited appellant to interrupt the hearing if appellant needed to confer confidentially with his counsel. Appellant contends that, when his microphone was then muted during the hearing, and he appeared to gesture and speak, the trial court failed to ensure his meaningful participation in the hearing, thereby violating his right to due process.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 US 319, 333, 96 S Ct 893, 47 L Ed 2d 18 (1976) (internal quotation marks omitted). In determining whether procedural protections comport with requirements of due process, we consider three factors: "[(1)] the private interest that will be affected by the [state] action; [(2)] the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and [(3)] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

"[Civil] commitment proceedings involve the possibility of a massive curtailment of liberty and, thus, implicate due process protections." *State v. Allison*, 129 Or App 47, 49, 877 P2d 660 (1994) (internal quotation marks omitted); *see also State v. D. R.*, 239 Or App 576, 582, 244 P3d

---

[2] The record reflects two instances when appellant's microphone was muted. In the first instance, as counsel for the state began to question the first witness, counsel for the state noted: "And it looks like I just want to be clear for the purposes of the record. The hospital does have [Appellant] on mute, correct? *** I saw some movements." The court responded, directing the court clerk: "Go ahead and take him off mute unless we have to go back." In the second instance, during their closing arguments, counsel for appellant and counsel for the state each noted that appellant's microphone appeared to be muted and appellant appeared to gesture and speak but was not heard.

916 (2010) (stating that a "serious deprivation of liberty and social stigma * * * are attendant to a civil commitment").

We observe that, in this case, appellant's ability to get the court's attention was crucial. Because appellant was not in the courtroom, we think that perhaps appellant's best means of participating—including to request a confidential conversation with counsel—was to speak. And, of course, involuntarily muting appellant's microphone could have affected his ability to meaningfully participate in the hearing. But we do not think that that is what occurred in this case. Indeed, in this case, appellant was represented by counsel, counsel was aware of the risk to appellant's ability to participate, and at no point did counsel request a confidential conversation with appellant. In addition, the court periodically addressed appellant directly, and appellant responded audibly to the court on a number of occasions. Further, while testifying, appellant engaged with the state's examiner. Any risk that appellant was denied, in his words, a "fair hearing," was mitigated by the fact that, despite some lapses, appellant did participate in the hearing as described above.

Further, in this case, the government had an interest in requiring appellant to appear remotely. The court explained that, in light of the history of the case, it made its decision that appellant should appear remotely for the safety of the people involved, and in light of the resources required to safely transport and supervise appellant in getting to the courtroom. The record of appellant's history and condition supports that assessment by the court.

On this record, while appellant's ability to communicate with the court and with his attorney may have been hampered at times, we conclude that the trial court requiring appellant to appear remotely did not result in a violation of his constitutional right to due process.[3] Accordingly, we affirm the trial court's judgment.

Affirmed.

---

[3] We note that, in reaching our conclusion, we have also considered the other instances to which appellant points.